839 So.2d 1272 (2003)
David Moan TRETTIN, Plaintiff-Appellant,
v.
Karla TRETTIN, nee Overby, Defendant-Appellee.
No. 37,260-CA.
Court of Appeal of Louisiana, Second Circuit.
March 17, 2003.
Donald L. Kneipp, Monroe, for Appellant.
Loomis & Dement, by Albert E. Loomis III, Monroe, for Appellant.
Robert S. Tew, Monroe, for Appellee.
Before BROWN, CARAWAY and DREW, JJ.
CARAWAY, J.
In this case, the trial court, after a partial hearing, rendered an interim award of joint custody of the children, naming the mother the primary domiciliary parent. The father then contested the custody ruling by claiming irreparable harm caused by the mother's conduct and sought an ex parte order for temporary custody. Upon the trial court's denial of his ex parte order, the father simultaneously sought supervisory review of the trial court's rulings and lodged this appeal. Finding no irreparable injury, this court first denied the request for supervisory review. Trettin v. Trettin, No. 37,189-CW (La.App.2d Cir.1/9/03). Because we find the trial court's rulings are not subject to appeal pursuant to La. C.C.P. art. 2083,[1] we now dismiss the father's appeal.

Facts and Procedural History
David Trettin and Karla Trettin were married on June 22, 1991. Of the marriage, four daughters were born. Both *1273 parties are employed as full-time physicians and the time demands of their careers required them to employ full-time nannies to care for their children. On February 7, 2002, David filed a petition for divorce and requested full custody of the girls or, in the alternative, domiciliary custody under a joint custody plan. David sought sole custody based upon Karla's alleged excessive drinking and an eating disorder. In his petition David also sought partition of the community property as well as the exclusive use and occupancy of the family home. Thereafter, Karla answered and reconvened, requesting that she be named domiciliary parent under a joint custody plan. Likewise, she also sought the exclusive use and occupancy of the family home.
Pursuant to La. C.C.P. art. 2592(8), the trial court set a rule to show cause for the custody determination on June 11, 2002.[2] Prior to the hearing, the parties by agreement chose two psychiatrists to evaluate the children's safety in the mother's care and both parties' need for possible therapy. On May 10, 2002, the doctors rendered a joint report substantially based upon interviews with the four nannies. The psychiatrist chosen by Karla interviewed her and she denied her alleged excessive use of alcohol or the existence of an eating disorder.
The parties agreed to obtain formal testimony from both psychiatrists about their findings at a partial hearing held in June, the original setting for the custody hearing.[3] At the conclusion of the proceedings, the trial court instructed the parties to either reach an agreement regarding custody or set another hearing date so that the court could render a decision.
On August 15, 2002, David filed a rule for divorce alleging that although he and Karla had lived separate and apart since the filing of the petition, they nevertheless had occupied separate areas of the family residence since then. The court rendered a judgment of divorce on September 30, 2002.
Pursuant to a consent order on November 6, 2002, Karla agreed to cease the consumption of alcohol and submit to random drug and alcohol testing.
On November 18, 2002, a sale of the family residence was apparently imminent. Because the parties could not agree on custody, the court rendered an Interim Order pending a complete trial on the custody issue. The order granted joint custody of the children and designated Karla the primary domiciliary parent.
Thereafter, on December 6, in response to the trial court's action, David sought an ex parte order of temporary custody of his daughters in accordance with La. C.C.P. art. 3945. Relevant to his custody claim, David submitted ten affidavits of various individuals who had allegedly observed Karla's suspect behavior. These affidavits included statements of previously and currently employed nannies, a nurse and a doctor, three private investigators, and one person who had seen Karla at a restaurant. Additionally, the June 11 and 14 hearing transcripts and the May 10, 2002 psychiatrists' report were attached as exhibits. *1274 On the same date, the court summarily denied the motion.
On December 17, David sought writs from this court requesting reversal of the November 18 Interim Order and the trial court's denial of his subsequent motion for an ex parte order of temporary custody. David complained about both custody determinations. In support of his position, David submitted substantially the same evidence used in support of his motion for an ex parte order of temporary custody, including the record of the June, 2002 hearing. On January 9, 2003, a separate panel of this court rejected David's claims regarding the custody issues "upon the showing made."[4] Simultaneously with his writ application, David also lodged the present appeal regarding the November 18 and December 6 orders.

Discussion
Prior to the 1990 changes in our law concerning the dissolution of marriage, provisional custody, or custody of the child during the pendency of divorce or separation proceedings, was specifically provided for in our law. See former La. C.C. arts. 146 and 157, and Acts 1990, No. 1009. Nevertheless, the right to an ordinary appeal of such provisional custody ruling was not available under La. C.C.P. art. 2083, since it was not considered an interlocutory judgment causing irreparable injury. McCarstle v. McCarstle, 521 So.2d 551 (La. App. 1st Cir.1988). There was no irreparable harm from a procedural standpoint because the hearing for a final judgment of "permanent" custody would soon follow, in which the merits of the custody dispute would be fully decided and stability in the child's environment would result. Loeb v. Shanton, 168 La. 874, 123 So. 604 (1929).
Following the 1990 changes ending the former provisional custody, the award of custody, whether "in a proceeding for divorce or thereafter," is simply a judgment of custody. La. C.C. art. 131. Such judgment is provisional only in the sense that custody may be altered later, after material changes in circumstances occur, as illustrated in cases such as Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731 and Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986). The award is therefore a final judgment. It is governed substantively under La. C.C. art. 131, which enunciates the best interest of the child test, and procedurally under La. C.C. art. 2592(8), which provides for trial by summary process. A special provision expediting the time for the filing of appeal of the judgment awarding custody is provided in La. C.C.P. art. 3943.
The rule for custody is a summary proceeding, conducted with rapidity, within the delays allowed by the court. La. C.C. art. 2591. Generally, summary proceedings are provided in instances where the issue to be resolved is narrow and/or the need for rapid adjudication is great. Clay v. Clay, 389 So.2d 31 (La.1979). Referring to its own rule for an expedited appeal process, our supreme court has said "this Court has recognized that, to the extent practicable, any and all proceedings affecting children should be given expeditious treatment." State of Louisiana, In the Interest of T.L.R., Minor Child of T.R. v. R.W.T., 98-2274 (La.1/20/99), 737 So.2d 688. See also, U.R.C.A. Rule 5-1 for the expeditious handling of the appeals of child custody rulings.
The one exception to the summary proceeding or rule for custody pursuant to La. *1275 C.C.P. art. 2592(8) is the ex parte, injunctive proceeding addressed in La. C.C.P. art. 3945, which provides, in pertinent part, as follows:
B. An ex parte order of temporary custody of a minor child shall not be granted unless:
(1) It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition.
(2) The applicant's attorney certifies to the court, in writing, either:
(a) The efforts which have been made to give the adverse party reasonable notice of the date and time such order is being presented to the court.
(b) The reasons supporting his claim that notice should not be required.
C. An ex parte order of temporary custody shall:
(1) Expire by operation of law within fifteen days of signing of the order; however, the order may be extended for good cause shown at any time before its expiration for one period not exceeding ten days.
(2) Provide specific provisions for temporary visitation by the adverse party of not less than forty-eight hours during the fifteen-day period, unless the verified petition or supporting affidavit clearly demonstrates that immediate and irreparable injury will result to the child as a result of such visitation.
(3) Be endorsed with the date on which the ex parte order is signed and the date and hour of the rule to show cause.
D. The rule to show cause why the respondent should not be awarded the custody, joint custody, or visitation of the child shall be assigned for hearing not more than fifteen days after signing of the ex parte order of temporary custody.
* * *
F. In the event an ex parte order of temporary custody is denied, the court shall specifically allocate between the parents the time which the child shall spend with each parent, unless immediate and irreparable injury will result to the child.
Article 3945, therefore, allows for an ex parte, temporary custody award after specific, verified allegations, showing immediate and irreparable harm to the child. Nevertheless, within the intendment of Article 3945, the ex parte order must be immediately followed by the adversarial summary proceeding or "rule to show cause." Such custody judgment on the rule to show cause contemplated by Article 3945 becomes therefore a final custody judgment in accordance with La. C.C. art. 131 and La. C.C.P. art. 2592(8).
Through a combination of rulings, the trial court first ordered, on November 18, an "Interim Order" or temporary arrangement for the sharing of custody. Then, when challenged by David through an ex parte request for custody pursuant to Article 3945, the trial court denied David's motion on December 6. The December ruling effectively maintained the previous allocation of joint custody, in accordance with the directive set forth in Article 3945(F). From the above review of our law, we now determine that neither one of the trial court's two rulings was subject to the right of ordinary appeal, and in fact, through the supervisory appeal, the evidence *1276 in support of David's claim for irreparable injury has already been considered and found insufficient by this court. Accordingly, we dismiss this appeal.
David argues that this court should consider this appeal because of the trial court's lack of authority to issue the November 18 Interim Order and because of the evidence of Karla's psychological condition established during the June, 2002 partial hearing. We have reviewed the above provisions of our law to make clear that the trial court's temporary custody ruling of November 18 has no statutory basis. Nevertheless, the parties directed the trial court down the path to such a ruling by their failure to utilize the June, 2002 setting for a complete hearing on the merits of each parent's right to custody. By the time of the June, 2002 hearing, the parties' rules for custody had been pending for months. Such matters require rapid resolution and adjudication. Yet, the parties' negotiations slowed down and parsed this process. When the trial court determined that negotiations had indeed broken down and that an interim ruling was required, it based its ruling on the partial record then before it. With such a ruling, the need for rapid adjudication was all the more compelling from David's perspective. Yet, instead of seeking an expeditious setting for the trial of his rule for custody, which the trial court should have immediately provided, David pursued another procedural course, including the two appeals to this court.
The Interim Order of November 18 was clearly an interlocutory ruling. La. C.C.P. art. 1841.[5] Pursuant to La. C.C.P. art. 2083, the interim interlocutory order would only be appealable through the ordinary appeal process if it caused irreparable injury. As shown above, the jurisprudence holds that such provisional custody award, which is made pending the full trial on the merits, does not cause irreparable injury. The recourse of the party who objects to such interim order is to seek an immediate trial of his rule for custody.
Moreover, in this case, David attempted through his ex parte motion to establish the existence of additional irreparable injury because of Karla's alleged condition. The trial court ruled that irreparable injury was not threatened by Karla's conduct, and this court agreed by rejecting David's application for supervisory review. The evidence presented in David's application included the record of the June, 2002 partial hearing. If ongoing irreparable injury had been established on that record, David's writ application would have been granted and an ex parte order of custody pursuant to Article 3945 would have been rendered.

Conclusion
Accordingly, there being no showing of actual irreparable harm to the children by Karla's actions nor procedural irreparable harm, the November 18 Interim Order is not an appealable judgment under La. C.C.P. art. 2083, and the appeal is hereby dismissed. Costs are assessed to appellant.
APPEAL DISMISSED.
NOTES
[1] Article 2083 provides, in pertinent part, that "an appeal may be taken ... from an interlocutory judgment which may cause irreparable injury, ..."
[2] Article 2592(8) provides for the use of summary proceedings as the procedure for an original custody determination.
[3] Although the transcript suggests that the purpose of the hearing was to evaluate Karla's need for hospitalization, in reference to the hearing, the court minutes state that "[r]ules for custody [were] taken up and tried."
[4] On January 9, 2003, this court also denied David's motion to consolidate the writ application and this appeal.
[5] Article 1841 provides that "[A] judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment."