997 So.2d 169 (2008)
Walter Harlan BEENE, III, Plaintiff-Appellee
v.
Pamela Nichole Mathews BEENE, Defendant-Appellant.
No. 43,845-JAC.
Court of Appeal of Louisiana, Second Circuit.
October 22, 2008.
*170 Gary A. Bowers, Mills, Turansky & Griffith, by Richard E. Griffith, Shreveport, for Appellant.
A. Richard Snell, Bossier City, for Appellee.
Before WILLIAMS, GASKINS and LOLLEY, JJ.
LOLLEY, J.
This child custody case arises from a judgment rendered against appellant, Pamela Nichole Mathews Beene, by the 26th Judicial District Court, Parish of Bossier, State of Louisiana. For the following *171 reasons we affirm in part, and amend in part.

FACTS
Pamela Nichole Mathews Beene and Walter Harlan Beene, III, were married on July 27, 1997. A daughter, CNB, was born during their marriage on March 29, 1998. On August 12, 1999, after the parties separated, a judgment was rendered and a Joint Custody Implementation Plan was approved by the court awarding joint custody of CNB and designating Pamela as the domiciliary parent of the minor child. On February 10, 2000, a judgment of divorce was rendered. On May 10, 2002 a judgment ("May 2002 custody agreement") was entered modifying the initial child custody plan to designate Walter as the domiciliary parent of CNB subject to a specific schedule of physical custody for Pamela. The May 2002 custody agreement remained unchanged until the filing of the petition that eventually gave rise to this appeal.
On March 23, 2007, Walter filed a Petition for Protection from Abuse against Pamela. An Ex Parte Order was signed by the court granting Walter temporary custody of CNB. On April 2, 2007, Walter filed a petition seeking to modify the May 2002 custody agreement. On April 19, 2007, an Interim Order was rendered to impose on Pamela a limited, restricted, and supervised visitation schedule. On May 9, 2007, the trial court further limited Pamela's supervised visitation.
On February 27, 2008, after an eight-day bench trial, the trial court awarded Walter sole custody of CNB. Pamela was denied overnight visitation. The trial court further ordered that Pamela would be required to: undergo periodic drug screens at her expense by submitting hair samples every 60 days, and obtain counseling, at least one session per month, until further orders of the court. The trial court also provided that the case would automatically be returned to the docket on May 15, 2008, and August 7, 2008, to dispose of any other issues and revisit the need for supervision during Pamela's time with CNB.
On May 15, 2008, Pamela appeared in court and the trial court revised its prior ruling allowing Pamela additional visitation and eliminated the supervision requirement. On June 2, 2008, Pamela filed this appeal seeking review of the judgment rendered February 27, 2008, and the subsequent judgment of May 15, 2008. This appeal ensued.[1]

LAW AND ANALYSIS
As in every child custody determination, the primary consideration is the best interest of the child. La. C.C. art. 131; Adams v. Adams, 39,424 (La.App. 2d Cir.04/06/05), 899 So.2d 726. The court is to consider all relevant factors in determining the best interest of the child. La. C.C. art. 134. Factors that may be considered are set forth in Article 134, but the court is not bound to make a mechanical evaluation of each. Rather, a custody dispute must be decided in light of its peculiar set of facts and the relationships involved in order to reach a decision that is in the best interest of the child. Wages v. Wages, 39,819 (La. App. 2d Cir.03/24/05), 899 So.2d 662.
*172 After weighing and evaluating expert and lay testimony, the trial court is free to accept or reject the expert's opinion and may substitute his common sense and judgment when warranted by the record as whole. Warlick v. Warlick, 27,389 (La. App. 2d Cir.09/29/95), 661 So.2d 706; Goodwin v. Goodwin, 618 So.2d 579 (La. App. 2d Cir.1993), writ denied, 623 So.2d 1340 (La.1993). Courts have inherent power to determine a child's best interest and to tailor a custody order, including visitation, that minimizes the risk of harm to the child. The trial court's findings in child custody matters are entitled to great weight and will not be disturbed on review without a showing of clear abuse. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).

Interim Order of Visitation
In her first assignment of error, Pamela argues that the trial court committed legal error when it imposed an Ex Parte Order and then an Order of Temporary Custody without an evidentiary hearing. Ex parte orders of temporary custody are authorized under La. C.C.P. art. 3945(B). Issuance of an ex parte temporary custody order requires specific and verified allegations of immediate and irreparable injury to the child. Trettin v. Trettin, 37,260 (La.App. 2d Cir.03/17/03), 839 So.2d 1272.
Although there is no transcript, apparently the trial court held a telephone conference after which it awarded temporary custody of CNB to Walter and later limited Pamela's access to her daughter. While we believe the trial court hastily entered an Ex Parte Order, the issue is moot. Since this Order, a custody trial occurred and a subsequent judgment controls. This court cannot provide the relief that Pamela ultimately seeks, namely time with her daughter during the time frame the Order was in effect. This issue would have been better disposed of as a writ. See e.g. Martin-Creech v. Armstrong, 42,649 (La.App. 2d Cir.09/12/07), 965 So.2d 624; see also Trettin v. Trettin, supra. As such, we pretermit any discussion on the procedural aspect pertaining to the Order of Temporary Custody.

Modification of Child Custody Agreement
Next, Pamela argues that the trial court erred in modifying the child custody agreement. While both Pamela and Walter designate the May 2002 custody agreement as a "considered decree," the record reflects otherwise. Although testimony was taken in the 2002 custody trial of CNB, it is evident that the parties ultimately agreed to the May 2002 custody agreement. This is clearly indicated in the Judgment of Custody which states "and by further agreement of the parties...." Further evidence is the Joint Implementation Plan which was "approved" by the trial court, indicating agreement among the parties. We have addressed the burden of proof associated in custody cases in Poole v. Poole, 41,220 (La.App. 2d Cir.03/22/06), 926 So.2d 60, where we explained:
The burden of proof on a party who wishes to modify a prior permanent custody award depends on the nature of that prior award. If the first award is a stipulated judgment, which typically is one resulting from the parties' consent to a particular custodial arrangement, a party seeking modification of the prior permanent custody award must prove that there has been a material change in circumstances since the original decree and that the proposed modification is in the best interest of the child. Evans v. Lungrin, 97-0541 (La.02/06/98), 708 So.2d 731. On the other hand, if the prior permanent custody award is a considered decree, then the heavy burden of proof under Bergeron applies. The Bergeron *173 rule states that when a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child.
In Poole, we evaluated and ultimately reversed the trial court, finding that the "decree" was stipulated and that the Bergeron standard did not apply to modify the agreement. Here, as in Poole, no language in the custody agreement indicated that the trial court considered the evidence, nor that the parties agreed to impose a Bergeron standard for future litigation. After a review of the record we do not find that the Bergeron standard applies.[2]
In this case, the voluminous record as a whole supports the trial court's conclusion to modify the May 2002 custody arrangement. The majority of the record focuses on the numerous incidents where police were involved in the domestic disputes between Pamela and her ex-husband Michael Minogue. In fact, most of the trial was a futile attempt to figure out who should be blamed for Pamela's arrests, Michael's actions, and Walter's role in these matters. Rather, emphasis should have been placed on the effect on CNB and, in general, her needs and emotional well-being.
While it is clear that Pamela loves her child, the record reflects that her emotional reasoning prevented her from keeping the best interest of CNB in mind. In fact, she continued her relationship with Michael after getting a protective order against him. We agree with Pamela when she testified that she made bad decisions, and we recognize her regret. However, the record reflects that there was none of the required foresight Pamela should have had as a parent when it came to her decision-making and the effect on CNB. She readily admits her marriage to Michael was "spur of the moment," and that this major decision was not discussed with CNB.
As for Pamela's arrests, we need not determine who was at fault for the various incidents that the police were involved in. The fact that it happened at all is indicative of the turmoil that was a part of CNB's environment while Michael was around. It is unfortunate that CNB witnessed police involvement at her mother's house. We only hope that Pamela was genuine when she testified that CNB will not be exposed to this again. We cannot punish Pamela for Michael's disturbed behavior or his lack of control; however, we do question Pamela's clear lack of communication with CNB about Michael and in dealing with what happened when Michael was a part of their lives.
Despite her sporadic employment, Pamela is able to provide and be there for CNB. CNB is an average student, and her teacher stipulated to the same. Pamela needs to be involved, as she has in the past, with CNB's school work and activities, and this is addressed in the current custody agreement. Pamela and Walter are good parents, but their relationship also impedes CNB from having a normal childhood. The record indicates anger and trust issues among the parents which we hope will be worked out in an effort to *174 keep the best interest of CNB the ultimate goal. We cannot find that the trial court erred in modifying the custody decree given the relationship with Michael Minogue and the testimony adduced at trial-it is evident that a modification was warranted.

Drug Testing/Counseling
Pamela argues that the trial court erred when it required drug testing and counseling for an unlimited time, and at her own expense. While the record is not clear whether drugs were involved, we cannot find that the trial court was clearly wrong in requiring drug testing. There were allegations regarding Pamela's friends and their use of drugs, and Pamela did have a history of substance abuse. We do find the lack of an end date for the drug testing creates uncertainty for Pamela; therefore, assuming the tests continue to be negative, we amend the judgment to cease testing one year from its imposition. If, however, there is indication that further testing is needed in light of the results, the trial court can reinstate the testing requirement. The trial court also required Pamela to attend counseling once a month, but again, with no end date. While we agree the need for counseling is in the best interest of the child and Pamela, we amend the judgment to cease this requirement one year from its imposition.

"Review" Hearings
Pamela makes much of the subsequent hearings that were held after the February 27, 2008, judgment arguing that there is no statutory authority allowing the trial court to "review" the judgment.[3] It is true that "review hearings" can not be held in civil custody cases to determine compliance of the custody decree. Brown v. Mock, 43,571 (La.App. 2d Cir.07/16/08), 987 So.2d 892. However, here, the judgment clearly indicates that there were issues still to be resolved. Specifically, the trial court noted that the 2008 summer visitation and visitation during the 2008/2009 school year and holidays needed to be determined. It was within the trial court's discretion to determine these issues at a later date. We do find the ability of the trial court to "review the necessity of continued supervision" questionable. However, since it was to Pamela's benefit that the subsequent hearing lifted the supervised visits, we see no need to review this aspect of the judgment.
Finally, Pamela also assigned as error that there was no sufficient basis for the supervised and restricted visitation set forth by the trial court. Appeal is taken from the judgment, and not from the findings on various issues in the course of the trial court's determination of the judgment. Welborne v. Welborne, 29,479 (La. App. 2d Cir.05/07/97), 694 So.2d 578, writs denied, XXXX-XXXX, XXXX-XXXX (La.10/13/97), 703 So.2d 621, 623; Davis v. Borskey, 1994-2399 (La.09/05/95), 660 So.2d 17. Again, the issue is moot since the trial court lifted the supervision requirement; therefore, we find this argument unpersuasive.

CONCLUSION
For the foregoing reasons, we amend Pamela's required drug testing and counseling to cease one year from their imposition. In all other respects, the custody decree is affirmed. Costs of this appeal are to be borne by Pamela Nichole Mathews Beene.
*175 AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] At the outset we note that in her brief, Pamela asks this court to review the judgment rendered from the scheduled August 2008 hearing. However, the Motion to Appeal does not include this. Further, since the appeal was taken before the scheduled hearing the record does not contain minutes indicating the existence of the hearing, nor has the record been supplemented with a modified judgment, if any. As such, any changes made during the August 2008 hearing are not on appeal.
[2] Nonetheless, even if the May 2002 custody agreement were held to be a "considered decree," the evidence clearly meets the Bergeron standard to modify the custody agreement.
[3] However, as noted above, any changes to the judgment from the hearing scheduled for August 2008 are not on appeal.