PEATROSS, J.
| iThis is an appeal from a judgment ordering supervised visitation in favor of M.A.T., the father of two minor children.[1] The father appeals and for the reasons stated herein, we affirm.

FACTS

The mother, D.M.B.T., and father, M.A.T., in this dispute were married in 1996 and separated in 2004, approximately nine months after learning that the father was infected with HIV. The couple had twins, who were five years old when the couple divorced. This is a heart-wrenching case; the record reveals that this is an upstanding family, with two good parents who both love the children very much. As of the date of trial in this matter, in 2008, the children were unaware that their father was HIV-positive.
At the time the father contracted HIV, he was the general manager of a retirement community in Bossier City.[2] According to the father, he picked up a trash bag outside of the residential buildings in the retirement center to take it to the Dumpster one evening and was stuck by a hypodermic needle that was loose in the bag. The father testified that, at the time, he did not think the incident was “a big deal” and he did nothing about it. He did not reveal to anyone that he had been stuck and did not report the incident or take steps to correct any disposal issues at the facility. Approximately six weeks after the incident, the father became terribly ill and, after a battery of |2tests, was informed that he had tested positive for HIV. The father is in managed treatment, is progressing well, and now lives with asymptomatic HIV.
As stated, the marriage failed and the couple ultimately divorced in October 2005. According to the testimony of the mother, the two had discussed divorce prior to the father’s contracting HIV and his infection *5 was not an issue in the divorce or initial custody proceedings. The stipulated Joint Custody Implementation Plan (“JCIP”), filed on February 10, 2005, provided for joint custody with the mother designated as domiciliary parent with visitation by the father “as agreed upon” by the parties.
In February 2006, the male child, who was six years old at that time, returned from a visit with the father with a bite mark on his buttocks. The child related to the mother and, ultimately, to the pediatrician, that his father had bitten him on the buttocks, through his underwear, while they were playing. The child told the pediatrician that his father had bitten him “through his pantys (sic).” There was a bruise in the shape of an adult mouth, but the skin was not broken. It is undisputed that this was an isolated incident of this magnitude — there are no allegations of any other acts of this type.
Following the biting incident, the mother insisted on supervised visitation only and the father agreed so that he could “continue to see the children.” The parties agreed that the father’s mother, the only member of the father’s family who was aware of his infection, would supervise the visits.
|sOn April 17, 2006, the father filed a Petition for Periods of Physical Custody and for Mediation, requesting unsupervised visitation; however, the mother was not served with the petition. No further action was taken until March 22, 2007, when the mother filed a rule nisi to modify the JCIP to provide for supervised visitation. On May 8, 2007, a judgment on rule was entered on stipulation of the parties. The judgment required, inter alia, supervised visitation and that the parties enroll in and complete an HIV education program. The father was further ordered to provide to the mother copies of all medical records on an ongoing basis. The purpose of this requirement was to inform the mother of lab results indicating the viral load, which would reveal the level of risk of the father transmitting the infection to others. This would allow the mother to monitor the level of contagiousness of the infection to the children.
On September 6, 2007, the father filed another petition for periods of unsupervised custody alleging that he had complied with the court-ordered obligations, including successful completion the HIV education class. On November 2, 2007, the father filed a motion for expedited hearing because he was being “forced by his former wife to exercise supervised visitation with the children” pending a judgment on the rule. Hearing was set for November 15, 2007. This hearing did not take place and the next filing of record is the parties’ joint motion to set the matter for trial filed on July 1, 2008. The mother then filed a response to the father’s petition for unsupervised visitation wherein she listed the following nonexclusive 14behaviors of the father that she alleged place the children at risk of contracting HIV and support supervised visitation:
a. the biting incident as described above
b. the father regularly cuts fruits and vegetables while holding them in his hand without protective gloves and then feeds them directly to the children
c. the father offers his children bites of food from his plate and from a fork that has been in his mouth
d. the father allows others, including his children, to drink from his glass after he has placed his mouth on the glass
e. the father does not take precautions recommended to prevent transmission of the disease to others, including the children
*6 In addition, the mother alleged that the father had failed to provide her with any medical records as ordered by the court. She was unable, therefore, to monitor the level of risk to the children while they were with their father.
On August 28, 2008, the trial judge ordered mediation and appointed experts; however, the issue of supervision was ultimately tried before the judge in May 2009. At the hearing, Dr. Gerardo Negron, the father’s treating infectious disease physician, testified regarding the risk of transmission of the virus from day-to-day normal activity and contact with the children. The father and mother also testified. On August 31, 2010, judgment was rendered ordering supervised visitation. The judgment was filed into the record on October 1, 2010. This appeal from that judgment ensued.

DISCUSSION

The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731. The court is to consider all relevant factors in determining the best interest of the child. La. C.C. art. 134.[3] The court is not bound to make a mechanical evaluation of each factor. Shivers v. Shivers, 44,596 (La.App.2d Cir.7/1/09), 16 So.3d 500. Rather, a custody dispute must be decided in light of its peculiar set of facts and the relationships involved in order to reach a decision that is in the best interest of the child. Id., citing Earle v. Earle, 43,925 (La.App.2d Cir.12/3/08), 998 So.2d 828, writ denied, 09-0117 (La.2/13/09), 999 So.2d 1151; Wages v. Wages, 39,819 (La.App.2d Cir.3/24/05), 899 So.2d 662.
The trial court’s findings in child custody matters are entitled to great weight and will not be disturbed on review without a showing of clear abuse. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). After weighing and evaluating expert and lay testimony, the trial court is free to accept or reject the expert’s opinion and may substitute his or her common sense and judgment when warranted by the record as whole. Beene v. Beene, 43,845 (La.App.2d Cir.10/22/08), 997 So.2d 169. Courts have inherent power to determine a child’s best interest and to tailor a custody order, including visitation, that minimizes the risk of harm to the child. Id.
| (¡In the case sub judice, the initial custody arrangement set forth in the JCIP was a stipulated judgment, i.e., one resulting from the parties’ consent to a particular custodial arrangement. As such, the party seeking modification (the mother) of the JCIP must prove that there has been a *7 material change in circumstances since the original decree and that the proposed modification is in the best interest of the child. Evans v. Lungrin, supra.
The custodial factor at issue in the instant case is the mental and physical health of the father, La. C.C. art. 134, and, accordingly, the propriety of his behavior with the children in light of the fact that he suffers from asymptomatic HIV. At the hearing, Dr. Negron provided lengthy testimony describing the risk levels of various “normal” activities that occur in caring for young children. He opined that day-to-day activities pose a “negligible” risk of transmission of the virus. Under cross-examination, however, Dr. Negron agreed that, while there may be no documented cases of transmission in the medical literature, there is always a possibility of transmission with any fluid-to-fluid contact, such as blood from cold sores or cuts/serapes.
The mother provided credible testimony regarding her concerns over the risks posed to the children if their father was not diligent in acting in ways to reduce any potential exposure of the children to bodily fluids that contain the virus. She testified that her son suffers from frequent cold sores, as does the father, and that the children are of the age where cuts, scrapes and bug bites are the rule rather than the exception. The father takes no |7precautions to ensure that his bodily fluids, whether from saliva, cold sores or possible wounds, do not come into contact with the children. Most significantly, the father admitted that he bit his son, hard enough to leave a defined bite mark. While he expressed sorrow and regret over that poor decision, the totality of the record reveals an overall disregard on the part of the father for the severity and seriousness of his condition. In light of the magnitude of the end result (possible infection of the children), if this situation is not regarded with the utmost seriousness, we feel constrained to agree with the trial judge that supervised visitation continue at this juncture. Visitation should be supervised at least until the trial judge determines that the children are old enough to be told of the father’s medical condition and are mature enough to- extricate themselves from any situation that may pose a risk of exposure to the virus. We are unable to say that the trial judge abused her discretion in maintaining the supervision.
As a final note, we feel it important to point out that the litigation in this protracted custody case began back in 2007, a year after the bite incident and more than 4 years ago. The children were 7 years old when this began and are now 11 years old. The majority of that time, it seems, the mother has been unilaterally enforcing supervised visitation. Again, it is the opinion of this panel that supervised visitation should remain in effect only until the determination is made that the children are mature enough to be told of the health of their father and are able to police their own interactions with him. As with any custody dispute, the goal is to further the best interest of the children. Bergeron, supra. More specifically, in the instant Lease, our holding minimizes the potential harm to the children, Beene, supra, while promoting happy and healthy relationships with two well-meaning and capable parents.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed at the cost of M.A.T.
AFFIRMED.

. The litigation below involved contentious issues of child support arrearages and contempt proceedings related thereto. Those issues have been resolved and are not a part of this appeal.

. The father testified that he remains employed as the executive director of the retirement community, which is now under new ownership. The father has also previously served as the director for the Federation of Families for Children’s Mental Health.

. Such factors may include: (1) The love, affection, and other emotional ties between each party and the child. (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child. (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs. (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment. (5) The permanence, as a family home, of the existing or proposed custodial home or homes. (6) The moral fitness of each party, insofar as it affects the welfare of the child. (7) The mental and physical health of each party. (8) The home, school, and community history of the child. (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference. (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party. (11) The distance between the respective residences of the parties. (12) The responsibility for the care and rearing of the child previously exercised by each party. La. C.C. art. 134.