LOLLEY, J.
| ,Amanda Lawson appeals a judgment of the 39th Judicial District Court, Parish of Red River, State of Louisiana, regarding custody of her minor child with her previous husband, Berley Lawson. For the following reasons, we affirm the trial court’s judgment.
Facts
At issue is the custody of the 14-year-old son of Amanda Lawson and Berley Lawson. Amanda and Berley separated on November 20, 2006. The following day, Amanda filed a petition for divorce and for the determination of incidental matters. On December 11, 2006, a consent judgment (the “initial judgment”) and joint custody implementation plan was entered, in which the parties agreed to joint custody of the child. In the initial judgment, Amanda was designated as the domiciliary parent, with Berley having visitation every other weekend, Wednesdays during the week he did not have the previous weekend visit, and one-half of the holiday time.
At some point after the initial judgment was entered, Amanda received a job offer in Caddo Parish, Louisiana, and in February 2007, after providing notice to Berley, she and the child moved to Shreveport, approximately 40 miles from her former *771 residence. In response, Berley filed a motion to enforce the joint custody plan. In that motion, Berley alleged that Amanda had not complied with La. R.S. 9:336, requested that Amanda be held in contempt, and sought for the child to remain enrolled in his school in Red River Parish. Shortly thereafter, Berley filed a motion to modify the joint custody plan, referencing his previous motion and requesting that the child custody plan in force be modified to name him as | ^domiciliary parent (collectively, “Berley’s motions”). Berley’s motions were not immediately addressed by the trial court.
Berley’s motions were ultimately scheduled for trial in February 2009, but were upset and continued to June 2009. The parties finally appeared in court in connection with the “several issues that have been pending since 2007.” The parties evidently reached an agreement in a pretrial status conference, which agreement was read into the record. The main change in this new agreement from the initial judgment was that the parties would equally share custody of their child on an alternating weekly basis. Amanda would remain the designated domiciliary parent. The issue of the child’s school was deferred for a year. The parties again appeared for trial in August 2010, but at that time, after hearing testimony from the child regarding where he wanted to attend middle school, the trial court judge re-cused himself. Judgment (the “2010 judgment”) was entered in accordance with the agreement reached in June 2009, concerning the modification to visitation, but the child’s school was not changed. Judge Andrew Gallagher then was appointed as judge ad hoc to preside over the matter.
No action was taken by either party until Berley moved to reset for trial the outstanding rules of both parties, which motion was set to be considered on March 21, 2012. The trial proceeded, and in October 2012, a judgment was entered. In that judgment, the trial court concluded that Berley had failed to prove a material change in circumstance or that the relief he requested was in the child’s best interest. Further, the trial court ^ordered that the 2010 judgment remain in place and denied Berley’s request to change the child’s school, but deferred a final decision on his school until May 2013, allowing the child to complete middle school where he had been attending. Finally, both parties were ordered to submit to Dr. John Simo-neaux for an updated psychological evaluation. This appeal by Amanda ensued.
Discussion

Judgment in Effect

Amanda’s first two assignments of error are both related to the trial court’s conclusion that the 2010 judgment would remain in effect. She submits that the trial court erred in so ordering when it concluded that (1) Berley had not shown the requisite material change in circumstances necessary to modify the original judgment of child custody and visitation, and (2) the relief requested by Berley was not in the best interest of the child. Amanda correctly argues that both of these elements must be proved by the party seeking a modification when the original custody decree is a stipulated judgment. She maintains that in making a judicial conclusion that there was no material change in circumstances and the relief sought was not in the best interest of the child, the trial court should not have allowed the 2010 judgment to remain in place. She argues that upon making that finding the trial court should have dismissed Berley’s motion and reverted the parties to the order of the initial judgment. We disagree.
*772 The award of custody, whether “in a proceeding for divorce or thereafter,” is simply a judgment of custody. La. C.C. art. 131; Trettin v. Trettin, 37,260 (La.App.2d Cir.03/17/03), 839 So.2d 1272, 1274. As further explained in Trettin:
Such judgment is provisional only in the sense that custody may be altered later, after material changes in circumstances occur, as illustrated in cases such as Evans v. Lungrin, 1997-0541 (La.02/06/98), 708 So.2d 731 and Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). The award is therefore a final judgment. It is governed substantively under La. C.C. art. 131, which enunciates the best interest of the child test, and procedurally under La. C.C. art. 2592(8), which provides for trial by summary process. (Emphasis added).
Here, among other things in connection with the parties’ divorce action, the initial judgment set forth a visitation schedule with the child. However, the June 24, 2009, hearing resulted in a modification to the initial judgment. Prior to appearing in court, the parties attended a status conference where they reached another agreement to change the custody agreement set forth in the initial judgment. At that hearing, Amanda’s attorney verified to the trial court: “[T]he parties have agreed today, after a status conference with the Court, to enter another interim agreement. That agreement will be that the parties will try or attempt a shared custody situation, where the visitation will be a week with each parent.” In addition to the shared custody agreement, several other issues were agreed to, and Amanda’s attorney further noted that “the final judgment rendered in December 2006 shall remain in full force and effect except as modified herein.” (Emphasis added). Bertels attorney clarified that the agreement was “an interim order to carry us through the next school year. The child will remain in the same school where he was last year. And, it’s our understanding that next summer, when this matter comes before the Court | ¡-.again, that the Court will interview the child as a witness in that matter.” Among other things, the parties agreed Amanda would remain the domiciliary parent. Most notably, the visitation was changed with the parents maintaining an alternating week visitation schedule, allowing Berley more time with the child. The parties agreed that the child would remain in the school he was attending, and that sole issue would be revisited. When the parties returned to court the next year, a judgment entitled “Interim Judgment” memorializing the agreement, was signed on August 10, 2010. The matter did not come back up before the trial court until May 2012-after the parties had been living and cooperating according to their agreement since June 2009.
In this case, although the 2010 judgment was designated an “interim judgment,” it was a final judgment as to every issue except the choice of school for the child. The 2009 hearing transcript indicates the parties agreed to it; thus, it would be considered a consent judgment and is final until one of the parents sought a modification or they both agreed to a change. Amanda’s contention that the trial court erred in allowing the 2010 judgment to remain in effect is misplaced. The trial court concluded that Berley failed to meet his burden of proof to modify the judgment that was in effect, i.e., the 2010 judgment. Amanda does not argue that the trial court’s substantive finding on that issue was incorrect. Although the 2010 judgment may have been titled “interim,” the record reflects that the parties had reached an agreement as to its terms in court in 2009, and they happily abided by that agreement for basically three years. Thus, when Berley |Bfailed to meet his *773 burden of proof (again, finding Amanda does not dispute), the trial court correctly left the 2010 judgment in effect. Amanda’s assignments of error on this issue have no merit.

Determination of Child’s School

Initially, we note that it is evident both parents love and care deeply for their child and sincerely desire the best for him. Except for the limited issue before us, it also appears that the parents have co-parented successfully, and all the parties, Amanda, Berley and their child, agree that the alternating-week custody situation is working well for this divided family. We commend the parents on doing a fine job of seeing to their child’s well-being despite their differences of opinion. In this case, it appears that the issue of the child’s school has been the primary bone of contention between these two well-intentioned parents. In Berleys motions, his main complaint was which parent would choose the child’s school, and the child has testified twice on the matter. With that in mind, we note the following.
Amanda argues that the issue of the child’s school was not properly before the trial court, thus it was error for it to make a determination on that issue. Amanda’s contention is baseless. We note that the procedural aspect of this ease has been handled piecemeal all along (through no fault of the current ad hoc judge), making it difficult to ascertain exactly which motions have been before the trial court at what time. Certainly, Berley had raised the issue of school in his motions previously. Although those motions technically may have been dispensed with partially, the record reflects that[7the issue of the child’s school continued to raise its head. Specifically, Berley’s attorney stated at the June 2009 hearing that the matter was not decided by the agreement made at that time. Moreover, the trial court addressed the issue both in 2010 and 2012 when the child testified precisely on that point, and Amanda made no objection to her child’s testimony then. If we are to consider the best interest of the child as dictated by La. C.C. art. 131, the trial court was certainly within its province in considering the matter. This assignment of error is without merit.
Amanda also maintains that the trial court erred in deferring until May 2013 a final determination on the choice of school for the child, because she argues that under La. R.S. 9:335(B)(3), she has the right to choose the school as the domiciliary parent. We disagree that the trial court erred on this point.
The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent, which would include the choice of schools, are subject to judicial review upon motion by the nondomiciliary parent. In the judicial review, it is presumed that all major decisions made by the domiciliary parent are in the best interest of the child and the burden of proving they are in fact not in the best interest of the child is placed on the nondomiciliary parent who opposes the decision. La. R.S. 9:335(B)(3); Bergeron v. Bergeron, 44,210 (La.App.2d Cir.03/18/09), 6 So.3d 948 (overruled on another point of law).
| ^However, in any child custody matter, the paramount consideration is the best interest of the child. La. C.C. art. 131; Earle v. Earle, 43,925 (La.App.2d Cir.12/03/08), 998 So.2d 828, writ denied, 2009-0117 (La.02/13/09), 999 So.2d 1151. The court is to consider all relevant factors in determining the best interest of the child. La. C.C. art. 134. Factors that *774 may be considered are set forth in Article 134, but the court is not bound to make a mechanical evaluation of each. Rather, a custody dispute must be decided in light of its peculiar set of facts and the relationships involved in order to reach a decision that is in the best interest of the child. Wages v. Wages, 39,819 (La.App.2d Cir.03/24/05), 899 So.2d 662.
Courts have inherent power to determine a child’s best interest and to tailor a custody order that minimizes the risk of harm to the child. The trial court’s findings in child custody matters are entitled to great weight and will not be disturbed on review without a showing of clear abuse. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
Here, the issue of the child’s choice of school was before the trial court on Ber-ley’s motions, he being the nondomiciliary parent. Most recently, the trial court, in its discretion, concluded that it was not in the child’s best interest to move him for his 8th grade year from Elm Grove Middle School to Riverdale Academy School in Red River Parish, noting:
[The child] is at a crucial developmental stage and this Court finds that this case requires periodic monitoring to ensure that the best interest of [the child] are met and that he feels that his opinion concerning his education are heard. Such periodic monitoring will allow the Court to exercise its broad discretion under [La. C.C. art. 134(9) ].... [The child] has been doing well in school academically and has taken great steps to develop socially outside of his comfort zone; he deserves the ^opportunity to finish middle school with the same classmates he has attended school with for the past two years. The Court notes that [the child] will continue to have the opportunity to participate in extracurricular activities that involve students from both Elm Grove and Riverdale.
However, regarding the future educational needs of the child, the trial court deferred its decision, stating the following well-considered reasons:
High school is an all too different developmental stage from the one in which [the child] is currently in. He would be eligible to apply for a driver’s license in less than two years and -will be freer to pursue his interests than he ever has been. At trial, [Berley] stated strongly that he wished the minor child to attend Riverdale before graduating and attending college; [Amanda] did not offer much as to her intentions other than to state that the most obvious choice for [the child] would be Parkway High School if he were to stay in the Bossier Parish school system. [Amanda] also stated her desire for [the child] to attend college.
[T]he Court declines to decide the route of [the child’s] high school education until it receives an updated [psychological] evaluation.... A year’s time will allow for [the child] to continue developing socially, particularly through football, 4H and his classes. It might also allow for [Berley and Amanda] to reach some common ground concerning the minor child’s high school education ....
In August 2010, the child expressed a preference for attending Riverdale Academy, but the decision was made then that he would remain in a Bossier Parish school. Almost two years went by, apparently with the parents cooperating and making their agreed upon custody plan work for them and their child. When the parties reappeared before the trial court at the 2012 hearing, the child again expressed his desire to attend school at Riverdale Academy for many of the same reasons as *775 his father. At that time, the child had attended Elm Grove Middle School (“Elm Grove”) in Bossier Parish for two years and was set to finish 8th grade there. The trial hpcourt heard testimony from Elm Grove’s principal, as well as the child’s English teacher. The evidence and testimony showed that the child was performing well at Elm Grove, a top-performing school in the parish and state. Most telling of his overall well-being was the fact that his grades and standardized test scores were well above average. The principal and teacher noted that he had no behavior problems, and he participated in school sports and other extracurricular activities. This record reflects that the child is well-adjusted and happy. From the child’s testimony, it appears that he wants to be around children more “like him.” The child characterized the children in Bossier Parish as being more “city,” whereas he is interested in guns for competitive shooting and hunting. But for those observations by the child, the record does not indicate that he is unhappy or maladjusted at Elm Grove. The evidence offered by Berley as to Riverdale Academy also failed to show that it offered the same opportunities and academic excellence as Elm Grove. Thus, the trial court determined that Berley failed to show it would be in the child’s best interest to move him for 8th grade, but deferred a decision for high school until the following year.
It is evident that the trial court’s reason for its action in deferring a decision was keeping with the primary consideration in child custody matters — the best interest of the child. Choosing a teenager’s high school is an important decision, which is usually made by informed parents along with input from a child as to his/her desire. The trial court wisely deferred a long-term decision regarding whether the child would remain in school in Bossier Parish permanently, especially with no evidence before it regarding | „the child’s potential Bossier Parish high school choice. Amanda correctly argues that a domiciliary parent has the decision-making right for certain matters under La. R.S. 9:335(B)(3); but in considering the best interest of the child, the decision of the trial court was clearly not an abuse of discretion. However, the desire of the child should be weighed in light of the objective information used by the parents in their respective decision-making process. Again, the best interest of the child is the paramount goal, and much can happen in a year regarding the maturity of a young teenager. The trial court wisely deferred for a year the choice of school for Amanda, Berley, and their child. Such a decision was not an abuse of discretion.

Psychological Evaluations

Finally, in her fifth assignment of error, Amanda maintains that the trial court erred when it ordered the parties submit for an updated evaluation with Dr. John Simoneaux, with all costs to be split equally between the parties. Amanda has not briefed that issue on appeal, and thus, it is abandoned. See, Uniform Rules— Court of Appeal, Rule 2-12.4, where an appellant fails to brief an assignment of error, the appeal court may deem that assignment abandoned.
Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed, with all costs of this appeal assessed to Amanda G. Lawson.
AFFIRMED.