McCLENDON, J.
A mother appeals a trial court judgment that maintained a 50/50 custody arrangement with the child's father, granted the child's father authority to make medical decisions, and ordered the child be vaccinated. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Teal Dicharry[1] and Nicholas Miller are the parents of the minor child, H.M. After the parents' relationship ended, Mr. Miller, on August 1, 2014, filed a petition that sought to set custody and support. The parties stipulated to a joint custody arrangement, which designated Ms. Dicharry as the domiciliary parent and granted Mr. Miller physical custody on alternating weekends and a four-hour visit once per month. Following various motions by the parties, the trial court eventually issued a ruling that maintained Ms. Dicharry as domiciliary parent, but granted joint custody of the minor child with physical custody *431 to be shared equally. The ruling granting Mr. Miller joint custody was affirmed by this court in Miller v. Dicherry, 17-0699 (La.App. 1 Cir. 9/27/17) (unpublished opinion) 2017 WL 4314358.
On March 29, 2017, Mr. Miller filed a motion to modify the joint custody order wherein he sought, among other things, to be designated the domiciliary parent. Mr. Miller indicated that he requested to be named domiciliary parent in order to make medical decisions for H.M.
On July 12, 2017, Ms. Dicharry filed a rule to modify visitation and child support, a motion for contempt, and a motion for a joint custody implementation plan. In her motions, Ms. Dicharry sought, among other things, modification of the 50/50 equal sharing to limit Mr. Miller's exercise of physical custody to every other weekend.
Following a hearing on August 7, 2017 in which the parties' motions were considered, the trial court issued both written reasons for judgment and a judgment on September 15, 2017. In its judgment, the trial court maintained the 50/50 custody arrangement with Ms. Dicharry as domiciliary parent, but ordered that Mr. Miller would have full authority to make medical decisions and ordered that H.M. be vaccinated.
Ms. Dicharry has appealed assigning the following as error:
1. The district court erred by not finding that Mr. Miller resides in Texas and allowing him to continue the 50/50 custody arrangement[.]
2. The district court erred by granting Mr. Miller the right to make medical decisions and ordering that the parties' minor child be vaccinated.
The parties have filed multiple pleadings with the trial court since the rendition of the September 15, 2017 judgment. However, none of the pleadings filed or rulings made have affected the issues currently before this court on appeal.[2]
DISCUSSION
In her first assignment of error, Ms. Dicharry contends that the trial court erred in allowing the 50/50 custody arrangement to continue because Mr. Miller lives, works, and resides in Texas. Ms. Dicharry avers that Mr. Miller never provided verification from his employer to show when he is off from work and that he will be able to exercise physical custody in Louisiana. Ms. Dicharry avers that Mr. Miller, in accordance with past practice, will likely bring H.M. to Texas during his custodial week.
The paramount consideration in any determination of child custody is the best interest of the child. LSA-C.C. art. 131. However, in actions to change custody decisions rendered in considered decrees, an additional jurisprudential requirement is imposed. Evans v. Lungrin, 97-0541 (La. 2/6/98), 708 So.2d 731, 738. A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Id. ; Major v. Major, 02-2131 (La. App. 1 Cir. 2/14/03), 849 So.2d 547, 551. By contrast, an uncontested decree in which no evidence is presented as to the fitness of the parents is not a considered decree.
*432 Major, 849 So.2d at 552. When a trial court has made a considered decree of permanent custody, the party seeking a change bears the heavy burden of proving that the continuation of the present custody is "so deleterious to the child as to justify a modification of the custody decree," or of proving by "clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child." Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La. 1986). "Although the trial court retains a continuing power to modify a child custody order, there must be a showing of a change in circumstances materially affecting the welfare of the child before the court may consider making a significant change in the custody order." Bergeron, 492 So.2d at 1194.
It is a well-recognized tenet of Louisiana jurisprudence that an award of child custody is not a tool to regulate human behavior. Major, 849 So.2d at 550. Every child custody case must be viewed within its own peculiar set of facts. Id. The trial judge is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Id.
The trial court noted that it rendered a considered decree of custody on August 9, 2016. Accordingly, the trial court recognized that the heightened standard enunciated in Bergeron applied. In its reasons for judgment, the trial court found that Mr. Miller had been temporarily living in Texas during a training program for his employment. However, the trial court also noted that Mr. Miller indicated that once his training period-which was near completion-was over, and assuming he was hired by the company, he would be working on a week on/week off rotation in Texas. Mr. Miller testified that he would be able to spend his custodial week in Louisiana and work in Texas during his non-custodial week. Because Mr. Miller could exercise physical custody of H.M. in Louisiana, the trial court did not find a material change in circumstances to warrant changing its prior 50/50 custody order.
The trial court also acknowledged Ms. Dicharry's concerns about H.M. traveling to Texas and set limitations to alleviate those concerns. Specifically, the trial court ordered that physical custody be exercised in Louisiana. Additionally, the trial court ordered that if Mr. Miller was "called to work in Texas during his custodial period, Mr. Miller will give the right of first refusal to Ms. Dicharry." Considering the foregoing, we cannot conclude that the trial court was manifestly erroneous in its factual determination, nor did it abuse its discretion in declining to change its prior custody order. Accordingly, Ms. Dicharry's first assignment of error is without merit.
In her second assignment of error, Ms. Dicharry contends that the trial court erred by granting Mr. Miller, the non-domiciliary parent, the right to make medical decisions and ordering immunizations for H.M. Ms. Dicharry notes that she has always been the domiciliary parent and her decisions are presumed to be in the best interest of the child, and Mr. Miller must demonstrate otherwise. See LSA-R.S. 9:335(B)(3).[3] Ms. Dicharry avers the *433 mere fact that she is opposed to immunizations was not sufficient grounds to warrant granting Mr. Miller the right to make medical decisions.[4] Ms. Dicharry contends that the trial court did not find that her refusal to vaccinate H.M. was not in the child's best interest, nor did the trial court find that there had been a material change in circumstances to justify a custody modification in this regard.
When parties are awarded joint custody, the court shall designate a domiciliary parent "except when there is an implementation order to the contrary or for other good cause shown." LSA-R.S. 9:335(B)(1). Courts have inherent power to determine a child's best interest and to tailor a custody order that minimizes the risk of harm to the child. Lawson v. Lawson, 48,296 (La.App. 2 Cir. 7/24/13), 121 So.3d 769, 774. The trial court noted that the parties could not agree on medical decisions that must be made for the child, including whether the child should be vaccinated. The trial court retained Ms. Dicharry as domiciliary parent, but ordered that Mr. Miller have the authority to make medical decisions for H.M. and ordered that H.M., pursuant to Mr. Miller's request, be vaccinated. The trial court also provided that all medical, surgical, and dental records be made available and accessible to both parents.
Contrary to Ms. Dicharry's assertions, the trial court did not base its decision solely on Ms. Dicharry's belief that the child should not be vaccinated. Rather, the trial court, after considering the parties' testimony, found that Ms. Dicharry "will not follow the standard medical practices recommended by pediatricians involved in the child's case." Specifically, Mr. Miller testified that he and Ms. Dicharry have "gone down the avenue of trying to discuss and consult [about health care], and time and time again there's just been too many missed opportunities, direct violations of recommendations from the doctors, threats of lawsuits and being discharged from practices." In reviewing the evidence, the trial court noted that Mr. Miller presented a letter from Hansbrough, Peters, Traxler & Scallan which stated that H.M. was discharged from their practice due to "non[-]compliance of recommended medical care, and verbal threats of legal restitution from the mother." Ms. Dicharry testified that she never threatened to sue any physicians, but that some doctors "did not want us in their practice because we couldn't agree on medical." Mr. Miller testified that he had never had any issues with H.M.'s physicians and that he would not do anything to cause them to resign or withdraw from caring for H.M. Additionally, the trial court also found that Ms. Dicharry, in contravention of its prior judgment, had failed to provide Mr. Miller notice seventy-two hours prior to scheduled doctor's appointments. Considering the trial court's factual determinations, we find no error in its conclusion that Mr. Miller met his burden to show "good cause" to grant him authority to make medical decisions.
*434 Ms. Dicharry also contends that the trial court erred in ordering that H.M. be vaccinated. Ms. Dicharry contends that the First Amendment to the United States Constitution grants a parent the unilateral right to refuse routine immunization on religious grounds. Ms. Dicharry further avers that given the presumption afforded the decisions of domiciliary parents, a finding that her refusal to immunize was not in the best interest of the child has no basis in the record.
When questioned about the specifics of her religious beliefs against vaccinations, the following colloquy occurred between counsel and Ms. Dicharry:
Mr. Prendergast: Let's talk about doctors. You have a religious belief that you will not allow your child to have vaccinations or immunizations?
Ms. Dich[a]rry: Yes.
Mr. Prendergast: What's that religious belief?
Ms. Dich[a]rry: It's my belief.
Mr. Prendergast: What is your religious belief?
Ms. Dich[a]rry: I don't have to describe that for you, sir.
The Court: Ma'am, you need to answer his question.
Ms. Dich[a]rry: It's just my belief.
Mr. Prendergast: What religion?
Ms. Dich[a]rry: I don't have to belong to a religion to have a belief.
Mr. Prendergast: Well it says religious belief. I just want to make sure I understand the...
Ms. Dich[a]rry: Religious in nature. I don't have to belong to a religious organization to have a belief about something.
Mr. Prendergast: What religion do you belong to?
Ms. Dich[a]rry: None.
Mr. Prendergast: Are you agnostic or atheist?
Ms. Dich[a]rry: Neither.
Mr. Prendergast: Do you know what that means?
Ms. Dich[a]rry: Yes, it means I don't believe in Christ or I'm agnostic and don't follow a religion at all.
Mr. Prendergast: So how would you define your religious belief or view point?
Ms. Dich[a]rry: I don't understand the question. I don't feel like I have to sit here all day and talk about religion or religious-I mean...
Mr. Prendergast: So you don't have a religion is what you're telling me?
Ms. Dich[a]rry: No.
Mr. Prendergast: So what belief do you have that a child should not be vaccinated or immunized?
Ms. Dich[a]rry: It's my belief.
Mr. Prendergast: Have you been immunized or vaccinated?
Ms. Dich[a]rry: I have.
Mr. Prendergast: Has Mr. Miller?
Ms. Dich[a]rry: I don't know.
Mr. Prendergast: What basis do you rely upon for the child not to receive immunizations or vaccinations ?
Ms. Dich[a]rry: Basis?
Mr. Prendergast: Yes.
Ms. Dich[a]rry: My belief.
Mr. Prendergast: Do you have any religious, scientific, or any type of other protocol that states-that you believe in that says she should not be vaccinated or immunized?
Ms. Dich[a]rry: It's just my belief.
Mr. Prendergast: Do you know that vaccinations and immunizations are there for the health and safety of your child?
Ms. Dich[a]rry: If you believe that.
*435 The First Amendment to the United States Constitution states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..." and is applicable to the states by virtue of its incorporation by the Fourteenth Amendment. See Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) ; DeHart v. Horn, 227 F.3d 47, 50 (3rd Cir. 2000). The mere assertion of a religious belief, however, does not automatically trigger First Amendment protections. DeHart, 227 F.3d at 51. "Philosophical and personal" belief systems are not religion, in spite of the fact that these belief systems may be held with "strong conviction" and inform critical life choices. Mason v. General Brown Cent. School Dist., 851 F.2d 47, 52 (2nd Cir. 1988). However, a person need not be a member of a formal religious sect or church to have "religious" beliefs. See Sherr v. Northport-East Northport Union Free School Dist., 672 F.Supp. 81, 91 (E.D.N.Y. 1987).
We recognize that the trial court found that it was in the best interest of the child, in accordance with Mr. Miller's request, that Mr. Miller be granted authority to make medical decisions and that H.M. be vaccinated. After considering Ms. Dicharry's testimony, the trial court made a factual determination that it did "not believe that her beliefs against vaccinations are sincerely and genuinely held 'religious' beliefs." Rather, the trial court found that Ms. Dicharry's "reluctance to have her child vaccinated arises from a personal, moral, or cultural feeling against vaccination for her minor child." The trial court found that "[t]hese views and feelings are more in the nature of a secular philosophy than a religious belief." Considering the record, we find no manifest error in the trial court's factual determinations. See Caviezel v. Great Neck Public Schools, 701 F.Supp.2d 414, 429-30 (E.D.N.Y. 2010), affirmed by, 500 Fed.Appx. 16 (2nd Cir. 2012), cert. denied, 569 U.S. 947, 133 S.Ct. 1997, 185 L.Ed.2d 866 (2013). Accordingly, the trial court did not err in ordering that H.M. be vaccinated as recommended by the child's physicians.
Ms. Dicharry's second assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the September 15, 2017, trial court judgment is affirmed. Costs of this appeal are assessed to appellant, Teal Dicharry.
AFFIRMED.

In the petition's caption, the appellant's name is erroneously spelled "Dicherry."

After Ms. Dicharry filed her notice of appeal, she filed a "Motion to Recuse" the trial court judge on the basis of an alleged personal relationship between the trial judge and members of Mr. Miller's family. The trial judge recused himself, noting that while any purported relationship did not prejudice the case, he would recuse on the basis that "it can cause an appearance of impropriety." The remainder of the pleadings do not appear in our record, but have been referenced in Mr. Miller's appellee brief.

Louisiana Revised Statutes 9:335(B)(3) provides:
The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

Ms. Dicharry notes that Louisiana Revised Statutes 17:170(E) allows a parent to exempt children from immunizations, as follows:
No person seeking to enter any school or facility enumerated in Subsection A of this Section shall be required to comply with the provisions of this Section if the student or his parent or guardian submits either a written statement from a physician stating that the procedure is contraindicated for medical reasons, or a written dissent from the student or his parent or guardian is presented.