MOORE, J.
| íAfter trial in this custody dispute, the trial court ruled in favor of the mother, Ebony Moore, naming her the domiciliary parent in a joint custody decree and allowing her to relocate with the three minor children to Houston, Texas. The father, Cedric Moore, filed this appeal. For the reasons that follow, we affirm the judgment.
Facts
Cedric and Ebony Moore married on June 7, 2003, in Houston, Texas and subsequently established their matrimonial domicile in Caddo Parish, Louisiana. Three children were born of the marriage: Darren Keith Moore, born September 1, 2004, August Brian Moore, born October 27, 2009, and Jacqueline Alise Moore, born December 23, 2010.
The couple initially separated in July of 2009 while Ebony was six months pregnant with August. During this time, Ebony moved to Houston to be with her family. At that time, the couple prepared a written agreement providing that Darren, age 5, would reside with his mother in Houston for the 2009-10 school year. They further agreed that if Cedric did not obtain a job transfer to Houston, Darren would return to Louisiana to live with his father.
Employed as an aircraft mechanic, Cedric and his family members were able to fly free of charge. During the initial separation, the couple continued to see each other frequently, flying between Shreveport and Houston.
The couple ultimately reconciled and returned to Shreveport. Ebony became pregnant with their third child, Jacqueline, in March of 2010. |2Ebony continued to make trips to Houston, and Jacqueline was born on December 23, 2010, in Houston.
After Jacqueline’s birth, the couple returned to Shreveport in January of 2011. Their relationship was still strained, however, and by March of 2011, they were once again discussing divorce. The couple flew to Houston at the end of March for the spring break holiday. Cedric returned early to Shreveport alone, expecting Ebony and the children to return to Shreveport when spring break was over.
Instead, on April 5, 2011, Ebony did not return at the end of spring break and obtained a protective order in Texas, claiming she suffered instances of physical abuse by Cedric in Shreveport.
Two weeks later, Cedric filed a petition for divorce and custody of the children in Shreveport on April 19, 2011. He also obtained an ex parte order granting him temporary legal custody of the three minor children. A hearing was set for May 17, 2011.
On May 16, 2011, Ebony filed an Answer and Reconventional Demand seeking custody of the children and permission to relocate to Houston.
By Interim Order signed on May 16, 2011 and filed on May 25, 2011, the court awarded the parties joint custody of the children with Cedric designated as the domiciliary parent; Ebony was given visitation every other weekend to take place in the Caddo/Bossier area. The court ordered Dr. Dana Nelson as mental health evaluator, and it ordered Cedric to pay for the cost of an evaluation of both parents.
|sTrial began on January 9, 2012. Ebony testified regarding her allegations of physical and emotional abuse. She admitted that in 2008, Cedric discovered that she had exchanged inappropriate emails with a former male friend, but she adamantly denied any extramarital affair. Because of these emails, Cedric did not believe that August was his child. She *1123 testified that Cedric continuously humiliated her in front of Darren by spanking her on her buttocks and referring to her as the “bitch.” She also recounted at least one incident in which Cedric forced himself sexually on her despite her protests and attempts to get away.
Ebony also testified that Cedric had let Darren watch pornographic movies on a computer. She expressed her belief that Cedric had anger issues and feared that if she did not obtain custody of the children allowing Cedric only supervised visitation, he may kidnap the children. She expressed her desire to move to Houston and live with her father and mother, claiming that her family home in Houston would provide the children with more structure and a stable home environment.
Cedric’s aunt, Kimberly Harris McConi-co, testified that Cedric was raised in her home with Cedric’s mother and her sisters. She stated that she had never seen Cedric apply physical discipline to his children, and she knew that Cedric abhorred spanking. She said that Cedric was a good father and that during his marriage to Ebony he did everything for the children.
Trial resumed on January 10, 2012 with the entire day devoted to the testimony of the court-appointed psychologist, Dana Nelson, Psyc. D. Based upon the several psychological tests administered to Ebony and l4Cedric, a home visit to Cedric, and interviews with Ebony and Darren, Dr. Nelson had issued a report to the court in which she recommended that Ebony be allowed to relocate to Houston with custody of the children, and that Cedric be allowed supervised visitation until he obtained counseling to deal with some of his issues.
Perhaps the most damaging aspect of Dr. Nelson’s testimony concerned her home visit to Cedric, who had custody of the children at that time. Dr. Nelson testified that when she arrived at the door of Cedric’s home, she overheard Cedric slap Darren and use very harsh language with him before sending him to his room. When she entered the home, she immediately checked on the child who had retreated to his room. She said that Darren later confirmed that his father slapped him. She also gleaned from her interview with Darren that he received a lot of spankings and feared his father.
Dr. Nelson reported her suspicions of possible child abuse to child protective services on two occasions, but no action was taken. She testified that the matter had apparently fallen through the cracks.
At the end of Dr. Nelson’s testimony on January 10, trial adjourned to be resumed at a later date. Before adjourning, the court changed the interim custody arrangement in effect since May 16, 2011, by giving Ebony temporary custody of the children and allowing Cedric visitation every other weekend.
| .¡Trial resumed again on March 12, 2012 and concluded on March 13, 2012.
Cedric testified that he has been employed by Express Jet Airlines for eight years, following his honorable discharge from the U.S. Marine Corps in 2003. He recounted his separation from Ebony in 2009, in which she took the children to Houston to live with her parents. However, she subsequently moved from that location without notifying him of her whereabouts. For the four-month period before they reconciled, she kept him from regularly communicating with the children. After the couple reconciled and returned to Shreveport, Ebony became pregnant with Jacqueline.
Then, in early April of 2011, Ebony failed to return home from Houston with the children and refused to take his telephone calls. When Cedric contacted Dar *1124 ren’s school regarding his absence, he was informed by Darren’s local school principal that Ebony had transferred Darren’s school records to Houston. He contacted the Houston police to report a missing person and was informed shortly thereafter that Ebony had obtained a protective order against him.
Cedric then filed a petition for divorce and custody, and he obtained a temporary restraining order. He stated that he was fearful of Ebony’s brothers, one of which he stated pulled a gun on him during their previous separation. He obtained temporary custody of the children from April of 2011, which became an interim order of custody signed on May 25, 2011, until it was changed on January 10, 2012, as noted above.
| (¡Cedric testified that during their marriage, he prepared the meals for the family, made sure the children bathed, purchased the children’s clothes, and helped with their homework. He denied that he ever said mean or inappropriate things to the children about Ebony, and he never allowed Darren to watch pornography.
He denied that he has ever physically assaulted Ebony in any way whatsoever, including the alleged spankings. Cedric also recounted several recent instances which demonstrated that the children are not afraid of him. He said that Ebony was influenced by her mother, who had suffered abuse in a previous marriage, to fabricate the stories of abuse and to claim that he had raped Ebony and physically abused the children. He introduced employer records that he was working on the day he allegedly raped Ebony, who had reported that Cedric stayed home from work on the day of the alleged rape in her affidavit used to obtain the protective order.
Finally, regarding Dr. Nelson’s report to the child welfare or child protection services, Cedric said that the matter did not, as Dr. Nelson testified, fall through the cracks. In fact, he stated that the matter was investigated by child welfare, including a home inspection and interview with Darren, and a visit to the school. He said that child welfare found the claim to be invalid.
Cedric’s mother, Robin Moore, testified that Cedric took care of most of the housekeeping duties. She had never witnessed Cedric abuse Ebony, although she had seen them argue a lot. She said that Ebony told her that Cedric abused her. She has also supervised Cedric’s visits with the children 17since the interim custody decree.
Ruling from the bench, the court initially found that the proposed relocation to Houston by Ebony was made in good faith, but observed that her attempt to make it a matter for the Texas courts was ill-advised. The court then reviewed each of the factors of La. R.S. 9:355.12 and La. C.C. art. 134. Ultimately, it found that the factors favored Ebony and ruled in her favor, allowing her to relocate to Houston and naming her the domiciliary parent in a joint custody plan. The court awarded Cedric visitation every other weekend in Houston from 5:00 p.m. Friday to 5:00 p.m. Sunday, to be supervised by Cedric’s mother or his aunt (Ms. McConico). After some discussion, the schedule was adjusted to accommodate Cedric’s off-days from work, which are generally Monday, Tuesday and Wednesday. However, during the school year, Cedric was to have visitation with Darren on Monday evenings only, which required him to bring Darren to school on Tuesday mornings.
After these matters were concluded, the trial court declared on the record to Cedric that it did not find his testimony to be credible, stating that it believed Cedric *1125 evaded giving straight answers to questions and was attempting to shade his answers.
On May 8, 2012, court reconvened to set child support. Based upon the worksheets submitted, the trial court set child support at $1,731 per month.
IsThis appeal followed.
DISCUSSION
On appeal, Cedric raises three assignments of error.
By his first assignment he alleges that the trial court erred in allowing Ebony Moore to relocate to Houston and naming her the domiciliary parent of the minor children. Cedric notes that the trial court found no domestic violence or that any abuse had occurred in this case. This finding, he argues, is contrary to allegations that supply the grounds in Ebony’s petition for relocation and custody. The court also found that there was no substance abuse, and that the parties were basically equal in many factors including their love for the children and their capacity and disposition to provide food, clothing, medical care and other material needs. There was no finding by the court that Cedric had raped Ebony as she alleged, nor a finding that he allowed Darren to watch pornography. The court found both parents to be morally fit, as well as mentally and physically healthy.
Nevertheless, without mentioning Dr. Nelson’s report, the court found that the weight of the evidence favored Ebony such that she should be named the domiciliary parent in a joint custody plan, allowed to relocate to Houston, and awarded Cedric supervised visitation only. Cedric contends that the trial court must have given inordinate weight to Ebony’s testimony and Dr. Nelson’s report, and it committed error when it determined that the factors under consideration favored her as the domiciliary parent of the children rather than him.
1 flThe paramount consideration in any child custody case is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731. The court is to consider all relevant factors in determining the child’s best interest. La. C.C. art. 134.[1] The court is not required to make a mechanical evaluation of the statutory factors but should decide each case on its own facts in light of those factors. Semmes v. Semmes, (La. *1126 App. 2 Cir. 12/16/09), 27 So.3d 1024; Bergeron v. Bergeron, 44,210 (La.App. 2 Cir. 3/18/09), 6 So.3d 948. The factors are not exclusive, but are meant as a guide for the court to assess then* relative weight and fashion a custody order within its great discretion. Id.
| inTo the extent feasible and in the best interest of the child, physical custody of the children should be shared equally. La. R.S. 9:335 A(2)(b); Semmes v. Semmes, supra. Nevertheless, even when joint custody is in the best interest of the child, the statute does not mandate an equal sharing of physical custody; substantial time, rather than strict equality of time, is the objective of joint custody. Id. The trial court’s discretion in fixing custody is great, and a custody award will not be disturbed on appeal in the absence of a clear showing of abuse. AEB v. JBE, 99-2668 (La.11/30/99), 752 So.2d 756; Semmes v. Semmes, supra.
A parent seeking to remove his or her child from the jurisdiction of the court has the burden of proving that: (1) the move is made in good faith; and (2) the move is in the child’s best interest. La. R.S. 9:355.13; Gathen v. Gathen, 2010-2312 (La.5/10/11), 66 So.3d 1; Payne v. Payne, 41,049 (La. App. 2 Cir. 5/19/06), 930 So.2d 1181, writ denied, 2006-1871 (La.8/9/06), 935 So.2d 130; Blackburn v. Blackburn, 37,006 (La. App. 2 Cir. 1/29/03), 836 So.2d 1222. In determining the child’s best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent’s general quality of life. La. R.S. 9:355.13.
In reaching its decision regarding a proposed relocation, La. R.S. 9:355.12 supplies 12 factors for the trial court’s consideration:
(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child’s life..
|u(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child’s preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
*1127 (10) The feasibility of a relocation by the objecting parent.
(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
The trial court is not required to expressly analyze each statutory relocation factor in its oral or written reasons for judgment in a relocation Incase. Gathen v. Gathen, supra. Cf. Curole v. Curole, 2002-1891 (La.10/15/02), 828 So.2d 1094. A trial court’s failure to expressly analyze each factor does not constitute an error of law that would allow de novo review. Gathen v. Gathen, supra. The trial court is free to give whatever weight it deems appropriate to each of the statutory factors in a contested relocation case and, thus, upon review, it is appropriate for a reviewing court to look to the reasons and factors the trial court did expressly take into account in reaching its ultimate determination, and, for the factors the trial court did not expressly discuss, it is appropriate for the reviewing court to determine whether the trial court’s failure to give weight to those factors led the court to abuse its discretion in reaching its ultimate determination on relocation. The district court is vested with great discretion in matters of child custody and visitation; its determination is entitled to great weight and will not be disturbed absent a clear showing of abuse of that discretion. Id.
After a complete review of the record, including the lengthy trial transcript and exhibits placed in evidence, we find no abuse of discretion in the trial court’s determination that Ebony should be named domiciliary parent and allowed to relocate to Houston with the children pursuant to the joint custody decree. Because of the distance involved between Shreveport and Houston, equal or near equal physical custody of the children was not a viable consideration in this case. Therefore, the court was required in these circumstances to designate a domiciliary parent, that is, the parent with whom the children would primarily reside. La. R.S. 9:355(B)(2).
In this instance, the trial court considered 11 of the 12 relocation factors of La. R.S. 9:355.12 along with the best interest factors. It found that Ebony’s request to relocate to Houston was made in good faith. The court noted that Cedric had asked for a divorce and Ebony’s family lived in Houston. Her parents would provide her the support of a home and family structure. Because Ebony apparently does not have any specialized training or advanced education, the court observed that it would be virtually impossible for her to make it on her own in Shreveport.
Of the 12 factors listed under La. R.S. 9:355.12, the court found that 5 of the factors, nos. 1, 5, 6, 7, and 8, favored Ebony. Specifically, regarding factor (1), the court found that, although both parents were involved in the children’s lives, the presence of Ebony’s extended family and support in Houston favored Ebony. Regarding factor (5), the court believed that Ebony would more likely promote a relationship between the children and Cedric, in spite of her history of twice removing the children to Houston and not allowing him to freely communicate with the children. The court also concluded in considering factor (6) that living in Houston offered advantages to the children in terms of home stability and schooling, and getting away from the hostile environment associated with their marriage while in Shreveport. The court found that Ebony really has no choice regarding relocation *1128 (factor (7)) given that she has no job training or education and her family lives in Houston. Finally, the court observed that by relocating to Houston, Ebony would have the support of her family and community and would be able to continue her education (factor (8)).
114The court concluded that 4 of the factors (nos. 2, 9, 10, and 11) favored neither party or should not weigh in this relocation request. The court believed that because the children are so young, relocation would have little impact on the children’s development (factor (2)). Regarding factor (9), the court determined that there was not enough evidence to make a determination of the extent each party has fulfilled his or her financial obligations to the other parent, although it noted that Cedric had paid the costs of the psychological evaluations. The court also concluded that it was likely not feasible for Cedric to relocate to Houston because his employment is in Shreveport (factor (10)). Finally the court found that there was no domestic violence by either parent (factor (11)), although it stated that “there has been some pushing and shoving.”
The single factor that the court found favored Cedric, factor (3), was a finding that it would be logistically and financially easier for Cedric to travel to Houston than for Ebony to travel to Shreveport, inasmuch as Cedric can fly free of charge due to his job and both their extended families reside in Houston. The court did not consider factor (4), the children’s preference. Finally, for factor (12), the court considered the “best interests” factors of Civil Code Article 134.
The court found that overall, the “best interest” factors favored Ebony. It noted that both parents love their children, so factor (1) was equal. Factors (2), (5), (10) and (12) favored Ebony, largely because of the stability of living with her parents in their Houston home (factors (2) and (5)), and its belief that Ebony would facilitate the children’s relationship |lawith Cedric (factor 10) and its belief that Ebony has previously played more of a role in the children’s daily lives, inasmuch as she did not work during the marriage. The court found that the other factors, love and affection for the children (1), their capacity and disposition to provide and care for them (3), moral fitness (6), and mental and physical health (7) were equal. Factors (4), (8) and (11) favored neither parent. It did not consider factor (9) related to the children’s preference.
The proverbial “elephant in the (courtroom” in this case was Dr. Nelson’s report. Although the trial court did not expressly mention the findings or conclusions of the report in her ruling, it is clear that the basis of some of the trial judge’s remarks regarding Cedric’s parenting skills, such as feeding the child, August, TV dinners, is contained in Dr. Nelson’s report or her testimony regarding the report. As acknowledged by counsel for the appellant, Dr. Nelson’s report is not favorable to Cedric, but without any express reference by the trial court to specific findings in the report, counsel has little choice but to attack Dr. Nelson’s credibility as well as her findings and conclusions. We find no merit in these attacks.
The report reflects Dr. Nelson’s belief that Cedric has anger issues and he is overwhelmed by the divorce and the responsibilities of the children. She believes his anger manifested itself by increasingly physical responses toward Ebony and the children. The report strongly recommends that Ebony be allowed to relocate to Houston with primary custody of the children and permit Cedric supervised visitation until he obtains counseling. Even though the trial court expressly stated that matters had not risen to the Mevel of *1129 domestic violence, only some “pushing and shoving,” we note that the trial court expressly stated that it did not find Cedric’s testimony to be credible, which largely consisted of denials of the accusations made by Ebony. The court also expressly found that Cedric’s parenting skills were deficient in some respects.
Matters of credibility and the weight given to evidence are the sole province of the trier of fact. For this reason, we find no abuse of discretion in the trial court findings that the best interests of the children dictates that Ebony be allowed to relocate to Houston and that she be named the domiciliary parent in the joint custody decree.
This assignment is without merit.
By his second assignment of error, Cedric contends that the trial court committed reversible error when it awarded the parties joint custody of the minor children, but it only allowed Cedric to have supervised visitation with his children. Cedric contends that the evidence in this case does not support or justify an award of supervised visitation, where there is no finding of domestic violence, substance abuse, sexual abuse, or other forms of abuse and neglect.
The trial court’s findings in child custody matters are entitled to great weight and will not be disturbed on review without a showing of clear abuse. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). After weighing and evaluating expert and lay testimony, the trial court is free to accept or reject the expert’s opinion and may substitute his or her common sense and judgment when warranted by the record as whole. Beene v. Beene, 43,845 (La.App. 2 Cir. 10/22/08), 997 So.2d 169. Courts have inherent power to determine a child’s best interest and to tailor a custody order, including visitation, that minimizes the risk of harm to the child. Id.
In this instance, the trial court gave no specific reasons for its decision to allow only supervised visitation for Cedric, but we assume that the court followed the recommendation of Dr. Nelson based upon her evaluations. The court expressly stated during its best interest analysis that she did not believe matters had not risen to the level of domestic violence in this case, just some “pushing and shoving.” It found there was no drug abuse, and both parents were mentally, physically, and morally fit. Although there was no finding that hostilities had risen to the level of domestic violence as defined in La. R.S. 9:364 of the Post-Separation Family-Violence Relief Act, the order for supervised visitation was reasonable, considering Dr. Nelson’s opinion that there was an escalating potential for violence in this case.
For these reasons, we find no abuse of discretion or reversible error in the court’s visitation order. We also note, however, that visitation schedules in a joint custody plan are subject to modification in order to meet the goals of allowing the non-custodial parent substantial time with the children and frequent and continuing contact. La. R.S. 9:355. Because visitation has an independent basis from custody, the Bergeron test rule is not applicable to a motion to modify visitation. The “best interests” of the child is the appropriate standard. Acklin v. Acklin, 690 So.2d 869 (La.App. 2 Cir.1997).
|1sBy his third assignment of error, Cedric contends that the trial court erred in setting child support without considering the mother’s income.
In addition to the $1,731 per month child support, Cedric was ordered to pay one-half of the children’s child care costs, estimated to be $95 per week or $411 per month. Evidence at trial showed that Ebony had worked at her father’s church *1130 while she resided in Houston, earning an average of $800 every two weeks for an average of $650 per month.
The trial court did not impute any income to Ebony, who was residing in Shreveport in the months preceding and during trial and was currently unemployed. The court expressly said it would not impute income to her because she had two children under the age of five.
Cedric argues that the child support award is excessive since she lives with her parents in Houston and does not have expenses for rent and utilities, and there was no evidence of her expenses. Cedric’s counsel has submitted two new worksheets (for demonstrative purposes), and requests that the court re-set child support or remand for a hearing on the child support issue.
We find no error in the child support award based on the evidence submitted at trial, which consisted of Cedric’s reported income at the time. Although Ebony had previously worked part-time, she was unemployed at the time of trial. She expressed her intention to return to school, presumably to improve her prospects of obtaining gainful employment.
Remand is not appropriate in this case. We note that a child support award is subject to modification after a hearing in the trial court pursuant to | lna properly filed motion.
For these reasons, this assignment is without merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court at appellant’s cost.
AFFIRMED.

. Under Art. 134, "Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.”