STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-250


DANNY R. ODELL

VERSUS

BILLIE KELLERHUIS ODELL


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 92135
HONORABLE DAVID BLANCHET, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED IN PART. REVERSED IN PART.**

**Richard Ducote**
**4800 Liberty Avenue, Third Floor**
**Pittsburgh, PA 15224**
**(412) 687-2020**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Billie Kellerhuis Odell**

**George R. Knox**
**117 W. Convent Street**
**Lafayette, LA 70501**
**(337) 264-9083**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Danny R. Odell**

**AMY, Judge.**

In an initial, considered decree, the trial court awarded the parties joint custody of their minor son. The trial court named the mother as the domiciliary parent. The parties returned to the trial court after the mother sought to relocate the child's residence to Illinois. The father opposed the relocation and pursued a change in domiciliary status. Additionally, the father filed a motion for contempt upon an allegation that the mother violated a temporary restraining order regarding the relocation of the child's residence to Illinois. Following a hearing, the trial court denied the mother's relocation request, named the father as the domiciliary parent, issued a joint and shared custody plan, and found the mother in contempt. The trial court awarded attorney fees to the father. The mother appeals. For the following reasons, we affirm in part and reverse in part.

### Factual and Procedural Background

The parties, Danny Odell and Billie Kellerhuis (formerly Billie Kellerhuis Odell), are the parents of a son born in 2009. In an initial, August 2011 custody decree, the trial court awarded the parties joint custody of the child and designated Ms. Kellerhuis as the domiciliary parent. At that time the trial court denied Ms. Kellerhuis's motion to relocate the child's residence to the State of Illinois.

On December 5, 2012, Ms. Kellerhuis filed a "Motion for Relocation Authorization Pursuant to R.S. 9:355.1-355.17, Expedited Hearing, & Temporary Order of Relocation." Therein, Ms. Kellerhuis again asked the trial court to allow her to relocate the child's residence to Illinois in order for her to accept a job offer in that state. She noted that the deadline for beginning the position was December 17, 2012.

By a filing the following day, Mr. Odell opposed the relocation to Illinois and suggested that the proposed relocation constituted a change in circumstances warranting a modification in the custody order. Namely, Mr. Odell sought designation as the domiciliary parent. Mr. Odell prayed for the issuance of a temporary restraining order to prevent Ms. Kellerhuis's relocation of the child's residence before a hearing could be conducted. Additionally, Mr. Odell alleged that, since the issuance of the initial custody arrangement, Ms. Kellerhuis had moved with the child from her apartment in Lafayette, Louisiana to Walker, Louisiana. He asserted that Ms. Kellerhuis did so without appropriate notice to him of the relocation and that the distance of the relocated home exceeded the mileage permitted by La.R.S. 9:355.2(B)(3).

Thereafter, on December 12, 2012, the trial court issued a temporary restraining order prohibiting Ms. Kellerhuis from "re-locating the residence of the minor child to Princeton, Illinois from his current residence, or across State lines, until such time that a hearing can be held in this matter in accordance with the provisions of La.R.S. 9:355.1 et seq." A hearing was scheduled for January 2013.

Before a hearing was conducted however, and in a January 3, 2013 supplemental opposition to Ms. Kellerhuis's request for relocation, Mr. Odell alleged that Ms. Kellerhuis had, in fact, relocated the child's residence to Illinois. He further asserted that Ms. Kellerhuis had made no effort to find employment in her initial residence of Lafayette, but had "focused all of her efforts in finding employment in the State of Illinois as a means of justifying a move to the State of Illinois which was previously denied" by the trial court. Mr. Odell simultaneously filed a rule for contempt, citing Ms. Kellerhuis's alleged violation of the December 12, 2012 order prohibiting her from relocating the child's residence to Illinois or

across state lines before a hearing could be conducted on her relocation request. He further argued that the alleged relocation violated the August 2011 custody judgment. Within the rule for contempt, Mr. Odell requested an award of expenses incurred by his objection to the relocation. The rule for contempt was set to be heard contemporaneously with the previously scheduled motions.

Although the hearing on the parties' respective motions commenced on January 23, 2012 as scheduled, the hearing was re-fixed so that the parties could file briefs regarding a motion in limine filed by Mr. Odell. Thereafter, the matter resumed in March 2012. Following a hearing, the trial court found that Ms. Kellerhuis had impermissibly relocated the child to Walker, Louisiana, a distance of more than seventy-five miles without authorization, thereby violating La.R.S. 9:355.1, *et seq.* Additionally, the trial court denied Ms. Kellerhuis's request to re-locate the child's principal residence to Illinois. The trial court ordered that Ms. Kellerhuis pay attorney fees to Mr. Odell "in accordance with the provisions of La.R.S. 9:355.6."

With regard to Mr. Odell's request to change the original custody decree, the trial court re-visited the prior order, naming Mr. Odell as the domiciliary parent and issuing a joint and shared custody implementation plan. Finally, upon a finding that Ms. Kellerhuis was in violation of the temporary restraining order issued on December 12, 2012, the trial court found Ms. Kellerhuis in contempt of court.

Ms. Kellerhuis appeals that judgment, assigning the following as error:

> A. The trial court manifestly abused his discretion in finding that Ms. Kellerhuis was not in good faith in her relocation request, instead finding that she simply wanted to exclude the child from his father's life, and, thus, in denying the relocation request.

B. The trial court manifestly abused his discretion in modifying the child custody decree to name Mr. Odell as the domiciliary parent and primary residential custodian, where the record does not support that Mr. Odell met his burden under *Bergeron*.

C. The trial court clearly erred as a matter of law in awarding attorney's fees purportedly under R.S. 9:355.6.

## Discussion

*Relocation Request*

Ms. Kellerhuis, as the parent seeking to relocate the principal residence of the minor child, had the burden of proving that 1) the proposed location was made in good faith and 2) the relocation was in the best interest of the child. La.R.S. 9:355.10. *See also Hernandez v. Jenkins*, 12-2756 (La. 6/21/13), 122 So.3d 524. With regard to the best interest element, La.R.S. 9:355.14 provides:

A. In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:

(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.

(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

B. The court may not consider whether the person seeking relocation of the child may relocate without the child if relocation is denied or whether the person opposing relocation may also relocate if relocation is allowed.

As explained by the supreme court, "[a] trial court's determination in a relocation matter is entitled to great weight and will not be overturned [on] appeal absent a clear showing of abuse of discretion." *Curole v. Curole*, 02-1891, p. 4 (La. 10/15/02), 828 So.2d 1094. 1096.

In its denial of Ms. Kellerhuis's request to relocate the child's place of residence to Illinois, the trial court rendered extensive written reasons. Referencing its earlier rulings in the case, the trial court remarked that Ms. Kellerhuis had previously been granted the relief she sought in the ongoing custody matter, except for the denial of her initial request to relocate to Illinois. However, the trial court determined that, after the initial decree, Ms. Kellerhuis

5

continued to pursue that relocation and did so in order to further separate Mr. Odell from the child. The trial court opined that Ms. Kellerhuis then set about pursuing a job offer in Illinois, without pursuing employment in Lafayette or Walker. The trial court further discounted the custody/visitation arrangement advanced by Ms. Kellerhuis, finding that, despite the child being "still in the bonding stage," Ms. Kellerhuis proposed that the time periods between seeing Mr. Odell would be "completely inappropriate considering the age of this child[.]" In light of this perceived intent to separate the child from Mr. Odell, the trial court found Ms. Kellerhuis to be in "bad faith[.]" After review, we find that the record supports a determination that, as the party requesting relocation, Ms. Kellerhuis failed in her burden of proving that the proposal was in good faith.

In an attempt to meet that burden, Ms. Kellerhuis testified that she moved to Illinois to pursue a job offer with the State of Illinois. She explained that the position would enable her to live adjacent to her parents, who had developed a close relationship with the child and who could offer assistance with his care while she worked. However, the trial court acted within its fact-finding role in rejecting that explanation. Rather, the trial court permissibly viewed the attempted relocation to Illinois as the acceleration of a pattern of behavior directed toward distancing the child from Mr. Odell.

Also, and in addition to what the trial court determined were manipulative attempts to report Mr. Odell for allegedly inappropriate behavior with the child, the trial court was aware that Ms. Kellerhuis moved beyond the seventy-five mile limit[1] permitted by La.R.S. 9:355.2[2] in her initial move to Walker. Ms. Kellerhuis

_____

[1] The parties stipulated at the hearing that the distance between the Lafayette residence and the Walker residence exceeded seventy-five miles.

did so without advance notice to Mr. Odell or permission of the court. Further, the record lacked evidence that the move was made in order to better Ms. Kellerhuis's job search options. Rather, Ms. Kellerhuis explained that she provided services in both the Lafayette and Walker locations in exchange for assistance with her rent. Otherwise, the unilateral move to Walker was largely unexplained in the record.

In addition to the fact that Ms. Kellerhuis was aware of the previous denial of her request to relocate the child's residence to Illinois, Ms. Kellerhuis removed the child from the state over both the objection of Mr. Odell and several days *after* the rendition of the December 12, 2012 temporary restraining order. While Ms. Kellerhuis suggested that she was entitled to travel with the child for a period of two weeks under the initial custodial plan, a reading of the custodial plan does not support that position in this instance. Rather, the trial court could have permissibly viewed the fine, technical interpretation of both the custodial plan and the relocation efforts as an attempt to distance the child from Mr. Odell and that she did so at the risk of violating both the custodial plan and the restraining order.

Similarly, although Ms. Kellerhuis suggests that the move to Illinois is necessary in order for her to secure a suitable job, the trial court rejected that purported motive. Notably, Ms. Kellerhuis failed to demonstrate that she engaged in any meaningful job search activities in an area closer to Mr. Odell. Rather, her

---

[2] Louisiana Revised Statutes 9:355.2 provides that the statutory framework controlling the relocation of a child's residence is applicable to a proposed relocation when:

> (3)     There is a court order awarding custody and there is an intent to establish the principal residence of a child at any location within the state that is at a distance of more than seventy-five miles from the principal residence of the child at the time that the most recent custody decree was rendered.

Both stipulation of the parties and testimony established that the distance between the Walker residence and the initial residence in Lafayette exceeded seventy-five miles.

testimony reflected that she sent only a few inquiries regarding possible positions she found via the internet or by word of mouth. This fact, too, supports the trial court's determination that Ms. Kellerhuis's reliance on the Illinois job opportunity was not the primary motivation. In opposition, Mr. Odell presented an expert in vocational rehabilitation who testified that Ms. Kellerhuis would be qualified for a number of jobs in the Lafayette area, and she could earn a salary in the mid-$30,000 range.

While Ms. Kellerhuis briefly argues that the trial court abused its discretion in its assessment of the best interest factors of La.R.S. 9:355.14, we note that Ms. Kellerhuis was required to prove both good faith and that the relocation was in the child's best interest. The trial court's finding as to good faith pretermits further discussion of the best interest factors insofar as it relates to the relocation request.

For these reasons, we find no abuse of discretion in the trial court's denial of the request to relocate the principal residence of the minor child to Illinois.

*Change of Custody*

In her brief to this court, Ms. Kellerhuis blends her argument that the trial court should have granted the relocation request with that pertaining to the separate custody issue. However, the trial court's ruling and analysis is two-fold. First, the trial court denied the relocation request, addressed above. Additionally, the trial court granted Mr. Odell's request regarding a change in custody, namely a change in the domiciliary parent designation and the issuance of a joint and shared custody implementation plan. With regard to his request, Mr. Odell was, of course, required to meet the burden of *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), since it is unquestioned that he sought to change the custodial arrangement provided by the considered decree of August 2011.

Restating the *Bergeron* standard, the supreme court has recently explained that:

> When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

> Thus, when a party seeks to change custody rendered in a considered decree, the proponent of change must not only show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody, but he or she must also meet the burden of proof set forth in *Bergeron*.

*Mulkey v. Mulkey*, 12-2709, p. 11 (La. 5/7/13), 118 So.3d 357, 365 (footnotes omitted). As with the issue of relocation, a trial court's determination regarding child custody matters is entitled to great weight and will not be disturbed on appeal absent a clear showing of abuse of discretion. *Gray v. Gray*, 11-548 (La. 7/1/11), 65 So.3d 1247, citing *Bergeron*, 492 So.2d 1193.

A large portion of the trial court's extensive reasons for ruling addressed its concern regarding what it determined to be Ms. Kellerhuis's ongoing efforts to keep Mr. Odell from the child. These reasons were largely set forth within the framework of the best interest of the child considerations of La.R.S. 9:355.14. However, those factors carried into the trial court's ultimate decision to grant Mr. Odell's request to be named the domiciliary parent. The trial court explained:

> The Court finds that the *Bergeron* heavy burden standard has been met by Mr. Odell. The Court finds that the actions of Ms. Kellerhuis are so deleterious to this child as to warrant a change of domiciliary custody from her to Mr. Odell. The Court believes that a shared custodial schedule is in the best interest of this child at this time. I do not think the child is seeing his father enough. I think the child needs continuing, ongoing contact with his mother.

After review, we find no abuse of discretion in the trial court's determination that Mr. Odell met the required burden.

The trial court's findings undoubtedly related to actions taken by Ms. Kellerhuis *after* the August 2011 considered decree. Those actions included two unilateral changes of location, one of those being an out-of-state location that would have necessarily affected Mr. Odell's exercise of his joint custody of the child. Further, the change of location to Illinois was taken under the shadow of temporary restraining order.

Additionally, the trial court addressed what it termed an "abuse of services" in an effort to create litigation support. On this note, testimony from social agency workers indicated that Ms. Kellerhuis had raised concerns of inappropriate conduct with the child. Although Ms. Kellerhuis denied that she felt that the child was being abused, the trial court referenced the reporting and explained that it feared that her conduct could eventually lead her to "try to convince the child that things are happening." The court further stated that: "I think it is immoral to, you know, take services that are designed to help a child and really use them for litigation support so you can, you know, accomplish your quest to move to Illinois[.]"

The facts underlying these findings are well established in the record. The trial court's interpretation of those facts relied upon an appreciation of the parties' testimony and assessment of their credibility. In light of the trial court's factfinding role, we do not disturb those conclusions. Rather, in light of the facts as found by the trial court, the record supports the view that Mr. Odell demonstrated a change of circumstances that materially affected the welfare of the child had occurred after the prior custody order. It additionally supports a view

that the continuation of the existing decree was so deleterious to the child as to justify a modification of the custody decree.

Accordingly, we find no abuse of discretion in the trial court's order of custody.

*Attorney Fees*

In its judgment, and as prayed for by Mr. Odell, the trial court ordered Ms. Kellerhuis to pay attorney fees to Mr. Odell in the amount of $3,000.00. The judgment reflects that it did so "in accordance with the provisions of La.R.S. 9:355.6[.]" However, as pointed out by Ms. Kellerhuis in her brief, La.R.S. 9:355.6 only provides that:

> The court may consider a failure to provide notice of a proposed relocation of a child as:
>
> . . . .
>
> (3) Sufficient cause to order the person proposing relocation to pay reasonable expenses incurred by the person objecting to the relocation.

While the statute provides for the payment of "reasonable expenses," it does not separately provide for attorney fees.[3] Certainly, [a]s a general rule, attorney fees may not be awarded to a successful litigant unless specifically provided for by statute or contract." *Campbell v. Melton*, 01-2578 (La. 5/14/02), 817 So.2d 69. In this case they were not.

As noted by Mr. Odell in his brief, La.R.S. 9:355.19 provides for sanction for an unwarranted or frivolous proposal to relocate a child, including reasonable expenses and attorney fees. In *Randazzo v. Prosperie*, 13-0704 (La.App. 1 Cir.

---

[3] The version of La.R.S. 9:355.6 effective until August 2012, immediately prior to the events now at issue, provided that: "The court may consider a failure to provide notice of a proposed relocation of a child as: . . . (3) Sufficient cause to order the parent seeking to relocate the child to pay reasonable expenses *and attorney fees* incurred by the person objecting to the relocation." (Emphasis added.)

11

9/13/13), 135 So.3d 22, the first circuit considered a situation in which attorney fees were awarded in a case involving a failure to send notice as required under the relocation statutes. The first circuit, noting that La.R.S. 9:355.6 no longer permits an award of attorney fees, nonetheless affirmed the award finding that such fees were otherwise available under La.R.S. 9:355.19. In that case, however, the first circuit remarked that, in making the award, "the trial court made no specific findings as to the cause regarding the award of sanctions." *Id.* at 30. The present matter differs from *Randazzo* in this latter regard. In his prayer to the court, Mr. Randazzo sought attorney fees pursuant to La.R.S. 9:355.6 and the judgment reflected that they were made pursuant to La.R.S. 9:355.6. In light of this specific award, we do not reference La.R.S. 9:355.19 as a viable method of recovery.

As La.R.S. 9:355.6 provides no basis for attorney fees, we reverse that award.

### DECREE

For the foregoing reasons, we reverse the trial court's award of $3,000.00 in attorney fees. In all other respects, we affirm the judgment of the trial court. Costs of this proceeding are assessed to the appellant, Billie Kellerhuis Odell.

**AFFIRMED IN PART. REVERSED IN PART.**

12