Judgment rendered May 25, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,611-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

AMANDA BRASHER                                    Plaintiff-Appellee
LANGSTON

versus

GARY LANGSTON, II                                 Defendant-Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of West Carroll, Louisiana
Trial Court No. 30,960

Honorable Will Barham, Judge

* * * * *

CUMMINS & FITTS, LLC                              Counsel for Appellant
By: Daniel C. Cummins
    Jessica L. Fitts

THE LOWERY LAW FIRM                               Counsel for Appellee
By: Scotty Wayne Lowery

* * * * *

Before COX, THOMPSON, and ROBINSON, JJ.

**THOMPSON, J.**

Without prior court authority, a mother relocated out-of-state with her new husband and her minor children from a previous marriage, who were subject to a custody order. The father asserted he did not consent to the relocation of the children and filed an opposition. After consideration by a hearing officer and then a trial, the trial court granted the relocation request of the mother but assessed her with $12,000 in expenses for failure to obtain prior authorization from the court to relocate. The father appeals the granting of the relocation. Finding that the trial court did not abuse its great discretion and for the reasons set forth below, we affirm the judgment of the trial court and leave undisturbed the award of expenses in favor of the father.

## FACTS

Amanda Langston Strong ("Amanda") and Gary Stephen Langston II ("Stephen") were married in 2007, and during their marriage, they had two children, a son born in 2008 and another son born in 2012. On May 1, 2017, Amanda filed a petition for divorce, alleging physical abuse by Stephen. She obtained a protective order against Stephen for herself and the two children. On August 4, 2017, the parties attended a hearing officer conference, which resulted in the hearing officer recommending that Amanda be granted domiciliary custody of the children. Stephen was ordered to pay $1,047 per month in child support. On August 7, 2017, a second protective order was granted in favor of Amanda and the children.

The protective order stayed in place until a hearing on January 8, 2018. During this time period, Stephen had not been paying child support and allegedly told Amanda that he would lose his job and be unable to pay

support if the protective order stayed in place. Stephen was an emergency room nurse, and Amanda was a dental hygienist. Amanda agreed to reduce the protective order to a stay away order, which would be issued in the divorce proceeding. The parties were eventually divorced on November 5, 2018. The custody order appointed Amanda as domiciliary parent, and Stephen would have custody of the children every other weekend, with 6 weeks' visitation during the summer.

In 2018, Stephen moved to Texas, where he worked part-time at a feed store while going to school full-time for graphic art design. During this time period, he did not pay child support. He allegedly lived with his sister, girlfriends, or in hotels while in Texas. He saw the children approximately ten times during the year, and copies of text messages reveal that he frequently asked to see the children and speak to them. Stephen moved back to Louisiana in the fall of 2019 and returned to work as a nurse. Child Enforcement Services began garnishing Stephen's pay for child support once he returned to Louisiana and started working.

In January of 2020, Amanda claims that she told Stephen that she and her new husband, Ryan Strong ("Strong"), were going to be moving for Strong's job. Amanda testified that Strong's company wanted to move him to Colorado but that they believed it was too far away. Instead, Strong took a new job that was located in Waco, Texas, so that they could be closer to family. Amanda and Stephen disagree about whether Stephen gave his consent to the move at that time. Amanda argues that Stephen agreed it would be better for the boys to be in the Texas school system and stated that he might move to Texas to be closer to the boys. The record reflects an

affidavit from Amanda's friend, who attested that Stephen told her that he would move to Texas, to be closer to the boys. Stephen argues that he did not know that Amanda was moving to Waco, Texas with the boys until he texted her about his visitation weekend in late May 2020, and she told him that they were in the process of moving. He argues that he never consented to her relocation with the children.

On June 24, 2020, Stephen filed a petition for injunctive relief in the parties' divorce and custody proceeding, asking the court to issue an immediate temporary restraining order and, in due course, a preliminary injunction prohibiting Amanda from relocating with the children. The trial court issued a temporary restraining order, which prohibited Amanda from removing the children from Louisiana. On July 7, 2020, Amanda forwarded a relocation notice via certified mail to Stephen, and on July 15, 2020, she filed an answer and reconventional demand to his petition for injunctive relief, which requested that the temporary restraining order be rescinded. The trial court thereafter vacated the temporary restraining order.

On September 4, 2020, the parties appeared at the court-mandated hearing officer's conference, where the hearing officer took up the issues of custody and relocation. The hearing officer recommendation states the facts in the present case, including Amanda's reasons for leaving the area and the problematic nature of Stephen's schedule, and cites Louisiana statutes related to relocation and notice thereto. The hearing officer recommended that the modification and request to relocate the children be granted. He then provided an amended joint custody implementation plan. Stephen objected to the hearing officer's recommendation.

3

On March 26, 2021, the trial court heard arguments regarding whether the relocation was properly considered and before the hearing officer, as Stephen argued that Amanda had not properly requested to relocate with the children. The trial court held that the issue of relocation was properly before the court and adopted the recommendation of the hearing officer regarding relocation and custody. The trial court noted that the hearing officer had properly considered all of the appropriate factors in relocation.

On April 16, 2020, the trial court heard the matter of the relocation, and Amanda, Stephen, and Stephen's fianceé, Hillary Copeland, testified. Amanda testified that both boys are doing well in school and are active in their school communities. She testified that her older son was a little nervous to start a new middle school but had adjusted and done well. She testified that at the time of her relocation, Stephen was about $24,000 in arrears in child support, and the home she moved to in Texas is larger and nicer than her old home in West Monroe, Louisiana. She testified that she earns more in Texas than in Louisiana and that her husband has an upwardly mobile job. Amanda testified that she thought it was important that the children have a relationship with their father and that she had done what she could to facilitate that, including encouraging the older child to answer his father's texts and phone calls and being open to additional custody time for Stephen. Amanda testified that she believes that her family is too entrenched in Texas to successfully return to Louisiana at this point. She testified that the children have friends, are doing well in school, have activities, and a church. They have a home that she and her husband own

4

together. She testified that she believes the parties must simply make the best of the situation.

Stephen testified that he was an Army Ranger for almost 10 years and then became a registered nurse, with a concentration in emergency medicine. He admitted to at least one domestic violence incident that led to the dissolution of his marriage. He also admits to having never paid child support, other than that portion of his wages that are garnished by the state. He testified that he moved back to Louisiana so that he could see the children more often. He testified that during the Covid-19 pandemic he had custody of the children more often because they were not in school. He worked seven days on, seven days off, and during his off weeks, he would have the children five or six days a week.

When questioned by the court, Stephen testified that he thought the children should remain the rest of the year at school in Texas because pulling them out of school in the middle of the year would be difficult. He also testified that he did not believe that the children should simply be removed from their mother's care and sent to live with him. Stephen acknowledged that they need their mom but believes that they need equal time with their dad. Stephen's fiancée, Hillary Copeland, testified that he lives with her in the house that she owns. She testified that he is a good father and has never been violent with her.

The trial court ruled that it would be in the best interests of the children to be allowed to relocate to Waco, Texas, with their mother. The trial court also found that Amanda was in violation of the relocation statutes

and awarded $12,000 in attorney fees to Stephen in connection with the relocation matter pursuant to La. R.S. 9:355.6(3).  This appeal followed.

## DISCUSSION

On appeal, Stephen asserts four assignments of error.

**First Assignment of Error: Amanda never requested permission from the court to relocate the children. Thus, a relocation cannot be granted.**

Stephen argues that Amanda never requested permission from the court to relocate and did not provide him with proper notice of her relocation.  Thus, he contends Amanda's failure to comply with that procedural requirement caused the trial court to err in allowing her to relocate with the children.

At a March 26, 2021 hearing, the trial court heard arguments regarding whether the relocation was properly before the court.  The trial court noted that the issue of relocation had already been argued and heard before the hearing officer and noted that it was in the best interests of the children to have the custody and relocation issues heard as quickly as possible.  The court found that the relocation was properly before the court.

Stephen cites La. R.S. 9:355.4 in support of his argument, which sets forth the notice requirement for the proposed relocation of children as follows:

> A. A person proposing relocation of a child's principal residence shall notify any person recognized as a parent and any other person awarded custody or visitation under a court decree as required by R.S. 9:355.5.
>
> B. If multiple persons have equal physical custody of a child under a court decree, the person proposing relocation shall notify the other of a proposed relocation of the principal residence of the child as required by R.S. 9:355.5, and before relocation shall obtain either court authorization to relocate,

6

after a contradictory hearing, or the express written consent of the other person.

Although La. R.S. 9:355.4(B) requires that the relocating parent obtain court authorization *prior* to relocating the children, the statute does not mandate that a petition or motion to relocate be filed by the relocating parent. It simply requires that a contradictory hearing be held. Based upon the language of the applicable statute, the legislature apparently did not intend for failure to comply with the requirement to obtain court authority prior to relocating children to be fatal to a request to relocate.

We find that the relocation was properly before the trial court, having initially been raised when Stephen properly petitioned the court to bar Amanda from relocating with the children, to which Amanda thereafter objected, asking the trial court to terminate Stephen's visitation. Moreover, jurisprudence states that "Louisiana's relocation statutes retain the best interest of the child standard as the fundamental principle governing decisions made pursuant to its provisions." *Randazzo v. Prosperie*, 13-0704 (La. App. 1 Cir. 9/13/13), 135 So. 3d 22. It is undisputed that the hearing officer and the trial court heard arguments from both parties regarding the relocation of the children. It is in the best interests of the children for this matter to reach a conclusion. Considering the procedural posture of this matter and the unique order in which the relocation issue was raised, we cannot say the trial court was manifestly erroneous reaching its conclusions. We find this assignment of error to be without merit.

**Second Assignment of Error: The Fifth Judicial District Court judge did not consider Amanda's failure to properly provide notice of the proposed relocation to Stephen in its final determination of relocation.**

7

Stephen alleges that Amanda notified him of the relocation of the children via text message during the process of her move to Texas. Stephen states that Amanda did not send a certified letter notifying him of her relocation until well after she had already relocated the children. Stephen argues that this notice was not proper pursuant to La. R.S. 9:355.6 and that the trial court did not consider the improper notice in its analysis of the validity of the relocation.

La. R.S. 9:355.6 states:

The court *may* consider a failure to provide notice of a proposed relocation of a child as:

(1) *A factor* in making its determination regarding the relocation of a child.

(2) A basis for ordering the return of the child if the relocation has taken place without notice or court authorization.

(3) Sufficient cause to order the person proposing relocation to pay reasonable expenses incurred by the person objecting to the relocation.

(emphasis added).

The record reflects that the trial court considered Amanda's lack of proper notice in its analysis of the proposed relocation of the children. Importantly, the trial court, in response to her untimeliness in requesting prior court approval, ordered Amanda to pay Stephen's reasonable expenses incurred through his objection to the relocation, pursuant to La. R.S. 9:355.6(3). As noted in the first assignment of error, failure to file timely notice of an intent to relocate is not fatal to such a request in this current form of the law as set forth by the legislature, but it can, and in this matter did, result in consequences for the delinquent relocating parent. Therefore, we find this assignment of error to likewise be without merit.

8

**Third Assignment of Error: The lower court gave great weight to the fact that the children were already residing in Waco, Texas temporarily in its granting of the permanent relocation. This was done in violation of 9:355.12(C).**

Stephen argues that the trial court gave great weight to the fact that the children were already residing in Waco, Texas, when making its determination regarding relocation.  La. R.S. 9:355.12(C) states that "if the court issues a temporary order authorizing relocation, the court shall not give undue weight to the temporary relocation as a factor in reaching its final determination."  Stephen cites the following statement made by the trial court during the hearing on this matter: "Well, the children of course and you know have been there since May the 28th … I guess the position that I'm in that I don't like to be in is it's already happened and I can't undo what's already been done, I can but I don't know that anyone would like what that would look like."  This statement by the trial court was made in the context of the trial court asking Stephen what he would, ideally, like to happen and what he believed to be the best interests of the children at that time.  The exact quote from the record is as follows:

> COURT: Well, the children of course, and you know have been there since May the 28th. Does that ...
>
> A. You know I objected to her moving out of West - I mean out of Oak Grove but they did that ...
>
> COURT: You did? Well and I guess the position that I'm in that I don't like to be in is it's already happened and I can't undo what's already been done, I can but I don't know that anyone would like what that would look like so I guess what I'm asking you is what would you like to see happen here today?  What do you believe is in the best interest of the children?

The record does not reflect that the trial court placed undue weight on the temporary relocation of the children to Waco, Texas.  The language cited

9

by Stephen was a part of the trial court's inquiry into what result Stephen believed would be in the best interests of the children and was not a part of the trial court's ruling. Moreover, the record reflects that the trial court did not base its decision to allow the relocation solely on the fact that the children currently resided in Texas, as evidenced by the trial court's adoption of the hearing officer's recommendation, which considered all factors listed in La. R.S. 9:355.14. As such, this assignment of error is likewise without merit.

**Fourth Assignment of Error: The factors the Court is to consider in the relocation of minor children pursuant to La. R.S. 9:355.14 favor the denial of the relocation of the Langston children strongly.**

Stephen argues that the 12 factors set forth in La. R.S. 9:355.14 do not favor the relocation of the children from Louisiana. Stephen contends the trial court erred in determining that the children should be relocated to Texas with their mother.

The paramount consideration in any child custody case is the best interest of the child. La. C.C. art. 131; *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731; *Moore v. Moore*, 47,947 (La. App. 2 Cir. 3/6/13), 111 So. 3d 1120. A parent seeking to relocate the principal residence of a minor child has the burden of proving that the proposed relocation is in good faith and that the proposed relocation is in the best interest of the child. La. R.S. 9:355.10; *Hernandez v. Jenkins*, 12-2756 (La. 6/21/13), 122 So. 3d 524; *Wylie v. Wylie*, 52,800 (La. App. 2 Cir. 5/22/19), 273 So. 3d 1256. La. R.S. 9:355.14 provides that in reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interests of the child, including the 12

10

factors enumerated therein. While La. R.S. 9:355.14 requires consideration of all 12 factors, the court is not required to give preferential consideration to any certain factor or factors. *Gathen v. Gathen*, 10-2312 (La. 5/10/11), 66 So. 3d 1.

In the present matter, the trial court found that it was in the best interests of the children to allow Amanda to relocate with them. The court noted that it found that Amanda was technically in violation of the notice requirement, although it noted that the violation may not have been willful. The trial court adopted the hearing officer's report and heard extensive argument by counsel on the matter. All 12 factors in La. R.S. 9:355.14 and those set forth in La. C.C. 134 were addressed in a full hearing before the hearing officer appointed by the trial court.

While a different conclusion very possibly could have reached based on the facts presented in this matter, the consideration on appeal regarding the ruling of the trial court is whether it abused its great discretion in arriving at that conclusion. A trial court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. *Wylie*, *supra*. The trial court is not required to expressly analyze each statutory relocation factor in its oral or written reasons for judgment in a relocation case. *Moore*, *supra*. A trial court's failure to expressly analyze each factor does not constitute an error of law that would allow *de novo* review. *Gathen*, *supra*; *Moore*, *supra*. The trial court is free to give whatever weight it deems appropriate to each of the statutory factors in a contested relocation case.

The district court has great discretion in child custody cases, and an award of child custody will be disturbed only on a showing of abuse of that discretion. *Merrells v. Dotray*, 53,551 (La. App. 2 Cir. 7/8/20), 299 So. 3d 208, *writ denied*, 20-01003 (La. 9/8/20), 301 So. 3d 30. While it is clear that both parties in this case love their children and desire a close relationship with them, we cannot say that it was an abuse of discretion for the trial court to allow the relocation of the children to Texas with their mother, even if we would have reached a different conclusion. This assignment of error is likewise without merit.

**Attorney Fees**

Next, we turn our attention to the award to Stephen by the trial court of $12,000 in attorney fees as part of the "reasonable expenses" that it cast Amanda for failure to pursue court authority to relocate prior to relocating the children. In her brief to this court, Amanda argues that the trial court's award of attorney fees to Stephen pursuant to La. R.S. 9:355.6(3) was in error and should be reversed.

As originally drafted, La. R.S. 9:355.6 provided a trial court with the authority to order the relocating parent to pay both the reasonable expenses and attorney fees of the objecting parent. However, in 2012, this version of the language of the statute was amended by Acts 2012, No. 627, effective August 1, 2012, to remove the "and attorney fees" language. *Randazzo*, *supra*. Amanda and Stephen were divorced after the change in the law. As such, La. R.S. 9:355.6(3) does not provide a basis for the award of attorney fees. *Rodock v. Pommier*, 16-809 (La. App. 3 Cir. 2/1/17), 225 So. 3d 512, *writ denied,* 17-0631 (La. 5/1/17), 221 So. 3d 70; *Randazzo*, *supra*. The

12

statute provides for the payment of "reasonable expenses," but it does not separately provide for attorney fees. *Odell v. Odell*, 14-250 (La. App. 3 Cir. 6/4/14), 139 So. 3d 1275, *writ denied*, 14-1436 (La. 7/15/14), 145 So. 3d 1034. Thus, the "reasonable expenses" allowed pursuant to La. R.S. 9:355.6(3) should not have included attorney fees.

However, to raise the issue on appeal, Amanda would have been required to either directly appeal that issue to this court or file an answer[1] to Stephen's appeal. The record in this matter is devoid of an appeal or answer by Amanda on the issue of attorney fees. Therefore, she is not entitled to consideration by this court of any modification of the trial court's judgment in that regard. *See* La. C.C.P. arts. 2082 and 2133; *King v. King*, 51,942 (La. App. 2 Cir. 4/11/18), 247 So. 3d 973. This issue is not properly before the court for review, and as such, we make no amendment to the trial court's ruling on attorney fees.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. The costs of this appeal shall be shared equally by the parties.

**AFFIRMED.**

---

[1] *See* La. C.C.P. art. 2133.